24736.   BARRETT *v.* BUTLER *et al.*

DECIDED FEBRUARY 27, 1936.

*John S. Wood, Smith, Smith & Bloodworth,* for plaintiff.
*Mozley & Latimer,* for defendants.

BROYLES, C. J. E. M. Barrett brought suit, in three counts, against Butler & Keen, a partnership, for an alleged cause of action growing out of certain cotton transactions on the New Orleans Cotton Exchange. The first count is a suit on account. The second alleges that the defendants are members of the New Orleans Cotton Exchange, and, as such, the plaintiff made certain deposits of money with them and certain contracts with them for buying and selling cotton, which finally resulted in a profit to the plaintiff; that "in all of the foregoing transactions herein described in this count the defendants were represented by one E. O. Sherman, as defendant's agent and representative, at Atlanta, Ga., in the county aforesaid." Count 3 is substantially the same as count 2 except it alleges that the petitioner is advised that the defendants did not execute one of the contracts given to Sherman as agent and representative of the defendants, and that if the defendants did not execute it they are liable to the plaintiff in damages for their failure to execute it, the measure of damages being the profit that would have accrued to the plaintiff had the contract been executed. The total amount claimed, as set out in each count, is $1219.12, less an admitted error of $35.

Sam B. Keen, a member of the defendant company, answered for himself, and admitted that Butler & Keen had handled some transactions for the plaintiff, but denied all the allegations of indebtedness. He "expressly denied that E. O. Sherman was ever the agent or representative of defendant;" and alleged "that every order for the purchase or sale of cotton futures for the account of the petitioner has been handled exactly in keeping with instructions given by the petitioner himself or his representative E. O. Sherman. Defendant shows that E. O. Sherman was himself a member of the New Orleans Cotton Exchange in his own name, and that he was not the agent or the representative of defendant in the transactions alleged, but that he was the agent and representative of petitioner E. M. Barrett; that the said E. O. Sherman could solicit business from customers like the petitioner in this case, and that he could place such business with any active clearing firm on the New Orleans Cotton Exchange as he might desire to give the business. This defendant shows that the petitioner gave orders to the said E. O. Sherman to execute for him, and that they were acted upon in good faith by this defendant and confirmation made

in every instance to either the petitioner or to E. O. Sherman, his representative, according as the orders were received, and that every such transaction was clear and unequivocal both for orders and for transfer of funds." After the introduction of evidence and the charge of the court, the jury returned a verdict in favor of the defendants. The plaintiff's motion for new trial was overruled, and on this judgment he assigns error.

The controlling issue is whether E. O. Sherman was acting as the agent of the plaintiff or of the defendants. This was an issue of fact which the jury determined in favor of the defendants in the light of evidence, which, while conflicting, was sufficient to authorize their finding. So far as the record discloses, the defendants did not know until after the plaintiff's loss that the plaintiff ever claimed that Sherman was their agent. For instance, after the plaintiff sustained his loss he began to write the defendants in reference to "your Mr. Sherman." Though the plaintiff and the defendants had considerable correspondence, the defendants at no time stated or intimated that Sherman was their agent. On the contrary, they wrote to the plaintiff that Sherman was not their agent. The evidence strongly tended to show the relation of principal and agent between the plaintiff and Sherman. For example, an item of $300, which the plaintiff claimed to have sent the defendants and which the defendants denied receiving, was turned over to Sherman by the plaintiff, and was receipted for, not by "Butler & Keen," or by "Butler & Keen by E. O. Sherman," or by "E. O. Sherman for Butler & Keen," but by "E. O. Sherman." The personal relationship between the plaintiff and Sherman was such that Sherman addressed the plaintiff as "E. W." and "Ed." In his business correspondence with the plaintiff, Sherman did not sign the name of the defendants "by Sherman," but signed his individual name, addressed the plaintiff as "Dear Ed.," and referred to the defendants, not as "we," but as "they." The evidence shows that the plaintiff gave Sherman orders as to selling and buying cotton contracts, and that Sherman argued with him about the wisdom of closing out a contract. The plaintiff testified: "Every dollar I ever sent them [defendants] went through this man's [Sherman's] hands. . . As to whether or not I ever had any direct dealings with Butler & Keen myself with reference to any of these transactions—no, he acted as their agent all the while

with me.  I dealt with Sherman as their agent.  The $300 I claim I deposited with these defendants on July 1, 1931, I don't know where that money was deposited. . . I told Mr. Sherman to purchase that cotton for me. . . I don't know whether he executed these orders according to the instructions I had given him or not. . . I didn't have any independent trade with Butler & Keen previous to that time.  I didn't know there was any such people until he told me. . . I haven't got the orders and instructions that I gave Mr. Sherman, I would just tell him how to transfer it, what months. . . He called me 'E. W.'; he would say 'E. W., the market is breaking, and *they* are calling on *us* for more money.'"  (Italics ours.)

Sam B. Keen testified that he was a member of the firm of Butler & Keen, which had been operating at least ten years; that he had never seen the plaintiff before that morning; that "during the time of the trading and the contracts which I have listed in the name of E. W. Barrett, or E. M. Barrett, Mr. Sherman was a member of the exchange.  As to what connection I had, if any, with E. O. Sherman, with reference to these alleged contracts for the purchase and sale of cotton on account of E. M. Barrett—well, he was merely a member of the New Orleans Cotton Exchange.  He sent orders to any firm he might give it to, who handled his transactions, for which he received and kept a commission.  He was not the agent of any broker.  The book which you exhibit to me is a copy of the official rules of the New Orleans Cotton Exchange, a certified copy of the rules.  During the transactions referred to in this suit Mr· Sherman was not our agent, and he has never been an agent of ours since our connection with the cotton exchange.  I never at any time employed Mr. Sherman to act as our agent in the solicitation of any contracts for the purchase and sale of jobs on the New Orleans Cotton Exchange for the account of Mr. Barrett or any other customer."  Also, that "every one of these contracts is under the supervision of the United States government, . . in accordance with the rules of the New Orleans Cotton Exchange, and subject to the United States cotton-futures act; that is printed on all the documents that go out.  Mr. Sherman did have an account with us for Mr. Barrett. . . He also had accounts with other brokers; he did business with various brokers on the New Orleans Cotton Exchange. . . In this particular trans-

action this particular account [of Barrett] was charged on our books to E. O. Sherman, and Mr. Sherman was solely responsible for losses incurred, and we were to charge them to Mr. Sherman's account. Mr. Sherman was not acting as an agent for Butler & Keen in any of the transaction detailed here in this suit, and he never has been our agent." The defendants introduced Rule No. 22 of the New Orleans Cotton Exchange, which required that all contracts be carried in the name of a member of the exchange, "and on his full and unlimited responsibility." The evidence showed that Sherman was a member of the exchange, and as such could solicit business, place it with any broker that he wished, and get a commission thereon. The defendants also tendered the ledger sheets of Butler & Keen showing the account of Sherman for Barrett. The defendant Keen testified that the ledger sheets showed the correct "record of money transactions" and "record of contract transactions," and the jury, by their verdict, accepted this testimony as true.

The evidence shows that more than a year after the plaintiff made the deposit of $300, he wrote to Butler & Keen, stating that Sherman "has been making me a lot of promises, and told me a lot of different things. *Somebody* is due me about $1200. I *thought* I was dealing with Butler & Keen. What about it? . . Please advise me." (Italics ours.) Butler & Keen wrote to the plaintiff, enclosing itemized statement of his account showing that he had a ledger debit of $234.32, and stating: "We have carefully checked all telegraphic transfers, orders, etc., and find our books are perfectly correct; therefore, if there were any errors caused in your account, it must be from your end. We would suggest your getting in touch with Mr. E. O. Sherman and advising us as soon as possible whether or not the account has been straightened." After receiving several letters from the plaintiff, the defendants finally replied to him, in part, as follows: "We are in receipt of your letter of November 23rd, and note your remarks about taking legal steps. This action on your part is agreeable to us; but if you will pardon our advice, we would suggest that you try and come to some understanding with Mr. E. O. Sherman, who is not our agent as you state. He is a member of the New Orleans Cotton Exchange the same as we are, and we handle some of his business the same as other brokers with whom he does business.

All we know about the matter is that our records are very clear, and we have all documents for all transactions both for orders and for transfers of funds. If you claim you told Mr. Sherman to buy and he claims you told him to sell, or you claim you did not give him an order and he says you did, matters of that kind are certainly between you and him."

Although the plaintiff testified that every dollar he sent to the defendants went through Sherman's hands, he made no effort to have Sherman present at the trial to testify as to the transactions. The plaintiff testified: "I don't know where E. O. Sherman is now. I haven't seen or heard of him in quite a bit. I don't know how long it has been. I have not tried to communicate with him lately. I have not tried to secure him as a witness in this case." He further testified relatively to Sherman representing Butler & Keen, as follows: "The paper you exhibit to me, purporting to be a receipt for $300, and which these gentlemen deny they got, that is a receipt for $300, and it came up this way: I was down there in the exchange one day, just kind of watching the market; and after the market closed Mr. Sherman and I left the building together, came out on the street, and he asked me if I didn't have a little cotton, and I told him I had a little spot cotton, and he says, 'Why don't you sell it and hedge, to get rid of the insurance?' and so on, and he showed me several points about it, and I says that would be pretty good. I hadn't thought very much about it. I asked him then who he was with, and he *said* he represented Butler & Keen, of New Orleans, and he said they were nice people, and went on and talked about them. He said they were good straight people and dependable. He said he had been with them for several years. He said then if I wanted to do that, just to leave a check with him so that he could deposit it with them. So I went on and sold my cotton, and I mailed him a check, and he got it cashed. This paper that I hold in my hand is a receipt that Mr. Sherman gave me for the $300, and it says received of E. M. Barrett $300, to be sent to Butler & Keen for 50 bales of cotton. It is signed by *E. O. Sherman* and is dated 7-1-31. · That was an item that they denied they had received." (Italics ours.) When Sherman "said he represented Butler & Keen," the plaintiff evidently relied on his statement. However, Butler & Keen certainly had no way of preventing Sherman or any one else from making

such a statement; and Keen testified that Sherman had no authority to make the statement. On the other hand, there was evidence for the plaintiff which strongly tended to establish that Sherman was acting as agent of the defendants, or that Sherman's conduct in dealing with the plaintiff had been ratified by the defendants. However, the court charged the jury on the subject of agency and ratification, and by their verdict the jury said that Sherman, in the transactions in question, was not acting as the agent of the defendants, and that the defendants had not ratified any of the acts of Sherman which were alleged to have been committed as the agent of the defendants. The fact that Sherman stated to the plaintiff that he represented the defendants does not bind them. "Agency can not be proved by the mere declarations of a person purporting to act as agent for another; and one who deals with such a person is bound to inquire into his authority, or take the risk of ascertaining, when it is too late, that he was not authorized to bind the alleged principal." *Carter* v. *Pembroke National Bank,* 11 *Ga. App.* 479 (75 S. E. 824). The evidence, while conflicting and not demanding the verdict for the defendants, authorized that finding.

The court did not err in admitting the testimony set forth in special ground 1 of the motion for new trial. While the question propounded to the witness was leading, it is well settled that it is within the discretion of the judge to allow such a question. The evidence was not inadmissible for any other reason assigned. The two excerpts from the charge complained of, when considered in the light of the entire charge and the facts of the case, are not erroneous for any reason assigned. The charge, especially on the vital questions of agency and ratification, was full and fair; and under the particular facts of the case the court did not err in refusing a request to give the following in charge: "I charge you that if the principal's name is disclosed, and the agent professes to act for him, it will be held to be the act of the principal." The refusal to grant a new trial was not error.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*