## 28812.   RICHIE & COMPANY *v.* COHEN.

DECIDED MAY 6, 1941.

*Edgar & Allan Watkins, Frank Little,* for plaintiffs.

*Joseph M. Brown, Noah J. Stone, J. Norwood Jones Jr.,* for defendant.

GARDNER, J.   Berry Cohen, the defendant, operated an iron and screen works in the City of Atlanta.   On February 5, 1940, while he was temporarily in the City of New York, an apprentice employee working in his shop received an injury from which he died on the same day.   W. H. Crenshaw was foreman of the shop in which the deceased worked.   Richie & Company Inc., the plaintiff, conducted the funeral of this employee, at a cost of $326.   The plaintiff contends that the defendant was responsible for the balance of this expense after $100 had been paid by the insurance company under the workmen's compensation law.   The case was tried in the civil court of Fulton County, and the jury returned a verdict in favor of the plaintiff.   The appellate division of that court reversed that finding, and entered final judgment in favor of the defendant, on the ground that the evidence was insufficient, as a matter of law, to show that Crenshaw had had authority to bind Cohen for these funeral expenses.

The evidence for the plaintiff shows, in substance, that Crenshaw, Williams, and Osborne, the latter a brother of the deceased,

went to Hubert Richie, general manager of the plaintiff, and informed him of the death and that the body was then at Patterson's Funeral Home, and that he wanted plaintiff to go for it and take charge of the funeral arrangements. The plaintiff's business was at Cornelia. The plaintiff went to Patterson's Funeral Home in Atlanta, and paid $35 to cover embalming charges. Crenshaw, according to the plaintiff, stated that he was manager of the Berry Cohen works, and that Cohen was going to take care of the funeral expenses and of the funeral home's item of embalming. The witness for plaintiff called Crenshaw the next morning after the family had selected the casket, and informed him as to the amount of the bill; and Crenshaw, according to the witness, said that it was all right. The witness related that "In making this 'phone call I asked for the manager, and Crenshaw was the one I talked to." He testified that he first spoke to the girl in the office, and that she said that the manager was in the shop, and could come in a minute. Crenshaw did not mention any insurance policy at that time or later. He stated that Berry Cohen would take care of that bill. About two or three hours before the funeral Mr. Brown called the witness, and stated that he was a lawyer and that Cohen would not pay the bill. "I informed him that the expenses had already been incurred. He told me to stop the funeral. I informed him that 'I am still expecting you to pay it.' Thereupon I again called for the manager of the defendant, and the girl who answered the 'phone again called Mr. Crenshaw, who came to the 'phone. I informed Mr. Crenshaw what the lawyer said; and Crenshaw, after stating that he knew nothing about that, told me to go right ahead. Then Mr. Williams came up to the funeral, and said that Mr. Crenshaw told him to tell me that everything was all right, that Crenshaw had talked to Cohen in New York, and he said to go right ahead and not worry about it a bit; so I did. I did not know there was a Mr. Cohen. Crenshaw told me to charge it to Berry Cohen or Berry Cohen Company. I just took it that it was a company. Crenshaw told me he was working for Berry Cohen, and that he was the manager. Crenshaw did not select or see the casket. The brother of the deceased did this. Plaintiff made no arrangement with the family to pay this expense. They signed no agreement. I told them I was not looking to them. I did not know at that time that I would get $100 from the insurance com-

pany. I learned this after Mr. Brown called. My brother presented the bill to the defendant, and Cohen sent my brother to see the insurance company. I knew nothing about the workmen's insurance, and that $100 was the limit for funeral expenses. That was not mentioned. Mr. Crenshaw did not mention insurance to me. The telephone girl said Crenshaw was manager, and Crenshaw said he was manager. That is all I know of his being manager. I knew nothing of his duties or authority. . . As to whether I relied entirely on the statements made—that he was manager, and confirmed by this young lady,—of course. Dorsey Osborne [brother of deceased] worked there for Berry Cohen at the time, and he came up at midnight after his brother died. . . Mr. Crenshaw did not tell me had taken this matter up with Mr. Cohen over long distance, but Mr. Williams stated that he had overheard a conversation between Mr. Crenshaw and Mr. Cohen in New York, and that Crenshaw told Williams to tell me it was all right."

The brother of the deceased testified, that he was working at the shop where his brother worked at the time of the injury; that Mr. Crenshaw was the man in charge of the works at Berry Cohen's, and was in charge of the business when Mr. Cohen was out of town. "He was the man we reported to there in the shop, and looked after the shop, and told us what to do and what not to do; that is, in that particular department in which I worked. He was in charge of the work that we did there. If we had something wrong he would tell us to change it. He assigned us. Mr. Cohen employed me and fixed my salary, and told me how many hours I would work, and the amount of the salary, and the type of work and where we would work. There are a number of employees. Mr. Cohen is in charge of the entire business, takes personal charge of his business. Any one looking for a job, or I did, went to Mr. Cohen and talked with him first." Richie, recalled, testified, in substance, that compensation insurance was never mentioned; that practically no people around Cornelia carry it, and he knew nothing about it; that he was positive that Williams told him that he overheard the conversations with Cohen; that Mr. Cohen said he was manager of Berry Cohen and made a definite agreement with witness about expenses of the funeral; and that as manager he would pay it. "I did not know there was a $100 limit for workmen's compensation funeral expenses, because some customers have turned over this

$100 to me and I have gotten these checks, and the families would pay the difference. Mr. Williams didn't tell me he was on the line, but he said he overheard the conversation."

We have, with painstaking detail, given in material substance all the testimony favorable to the plaintiff, since the evidence on which the verdict was returned must be construed in the most favorable light for the plaintiff. Crenshaw, Williams, and the office girl who answered Mr. Richie's call, together with Mr. Berry Cohen, the defendant, testified for the defendant. The first three witnesses were employees of the defendant, and denied all the material testimony of the plaintiff. Crenshaw denied stating that he was manager of Berry Cohen, or that he contracted to pay the funeral expenses, and that his sole duties were as foreman of the shop only, or that he mentioned the matter to Cohen on the 'phone. Williams denied the conversation as testified to by Richie. The girl denied that she informed the plaintiff that Crenshaw was manager. The defendant testified, that Crenshaw had no authority except as foreman of the shop; that he (Cohen) was his own manager; that Crenshaw had no authority to make any such contract as was claimed by the plaintiff; and that when Crenshaw informed him over long distance that Osborne was dead he instructed him to turn the matter over to the insurance people.

The plaintiff assigns error on two grounds: First, that the appellate division of the civil court was without authority to enter final judgment; that if the finding were reversed the case should have been returned to the trial court for another trial. Second, that the evidence was sufficient to sustain the finding of the jury. As to the first question, counsel for the plaintiff do not refer to it, and it will be regarded as abandoned. In passing on the second question the evidence must be construed most favorably to sustain the verdict. *Western & Atlantic Railroad* v. *Mathis,* 63 *Ga. App.* 172 (10 S. E. 2d, 457); *Martin* v. *Hutchinson,* 26 *Ga. App.* 24 (2) (105 S. E. 313); *Western & Atlantic Railroad Co.* v. *Ferguson,* 113 *Ga.* 708, 714 (39 S. E. 306, 54 L. R. A. 802). When this is done, we think the appellate division of the court committed no error in reversing the judgment of the trial court and in entering final judgment in favor of the defendant. There is no evidence in this record that would authorize a jury to find that Crenshaw, even though he did make a contract with the plaintiff, as contended, had

such authority. For an agent to bind his principal two things must be proved: first, the relationship of principal and agent; and second, that the agent acted within the scope of his authority.

Richie, who represented the plaintiff in the transaction and who gave all the material testimony for the plaintiff on the question of Crenshaw's authority to bind Cohen, did not profess to know Cohen or know of any authority vested in Crenshaw by Cohen, but relied entirely on what he contended Crenshaw told Richie as to Crenshaw's authority. Agency can not be proved by the declarations of an agent. *Abel* v. *Jarratt*, 100 *Ga.* 732 (2) (28 S. E. 453); *Barrett* v. *Butler*, 52 *Ga. App.* 704 (184 S. E. 433); *Smith* v. *Hendricks*, 43 *Ga. App.* 361 (158 S. E. 764). This being true, we look to the testimony to see whether or not there are any other circumstances which, when coupled with this declaration of the alleged agent, would be sufficient to clothe Crenshaw with authority to bind Cohen. We have studied with diligence the evidence for the plaintiff on this point. We fail to find in the record any testimony or circumstance, outside of the alleged statement of Crenshaw, that would remotely indicate that Crenshaw was authorized, within the scope of his employment, to make a contract which would bind Cohen to pay for the funeral expenses of another employee of Cohen. We are not unmindful of the testimony of the plaintiff as to what Williams is said to have told Richie. Assuming, as we are bound to assume, that Williams did tell Richie that he (Williams) overheard a long-distance telephone conversation between Crenshaw and Cohen, in which Cohen told Crenshaw that he, Cohen, would pay the funeral expenses in question, this would not be sufficient to bind Cohen. This evidence, in its most favorable construction, could be nothing more or less than corroborative testimony of Crenshaw in a declaration of agency; but we think its true status is hearsay. So we do not think that the testimony of the plaintiff with reference to a conversation between Richie and Williams is competent to prove either agency or ratification.

We have carefully studied the cases of *Mason* v. *Rice*, 47 *Ga. App.* 502 (170 S. E. 829), *Martin* v. *Bridges & Jelks Co.*, 18 *Ga. App.* 24 (88 S. E. 747), Miller *v.* Cornell-Young Co., 187 N. C. 550 (122 S. E. 383), and others relied on by counsel for the plaintiff, and have studied cases not cited, in our research on the issues in this case, and we have failed to find any authority, where the

facts were similar to those of the case at bar, in which any court has approved the authority of an agent to bind the principal in such circumstances.

*Judgment affirmed.   Broyles, C. J., and MacIntyre, J., concur.*