## 43205. 20/20 VISION CENTER, INC. v. HUDGENS.
(345 SE2d 330)

MARSHALL, Chief Justice.

This suit was instituted by the appellant, 20/20 Vision Center,

Inc., through which its president, Dr. John T. Hendrix, Jr., is engaged in the practice of optometry. The appellee is Scott Hudgens, Jr., d/b/a Scott Hudgens Companies, who owns the Columbia Mall, a/k/a Avondale Mall (referred to hereinafter at times as the mall). The appellant's complaint is that the appellee has breached an agreement to lease space to the appellant for the practice of optometry in the mall. After conducting a hearing on the appellant's application for an interlocutory injunction, the trial court entered an order dismissing the complaint. For reasons which follow, we reverse.

In March of 1985, the appellant and appellee were engaged in discussions and negotiations in regard to the appellant's leasing of space in the mall. On March 26, 1985, Mr. Francis R. Huidekoper, an agent of the Scott Hudgens Company involved in the leasing of property at the mall, sent a letter to Dr. Hendrix, setting forth the "Terms and Conditions to consummate the Lease at Columbia Mall." In addition, a copy of the proposed lease was enclosed with the letter. This lease was for a term of five years.

On May 20, 1985, Mr. Abe Sharony, whom Dr. Hendrix had retained as his attorney, sent a letter to Mr. Huidekoper, stating that Dr. Hendrix would be willing to sign a lease under the terms and conditions specified in the foregoing letter. One of these terms was that "[l]andlord shall replace existing brick store front with glass, and shall bring out new glass store front forward, in accordance with drawings as reviewed by the parties . . ."

A meeting was held between the parties on May 21, and on May 22 Mr. Sharony sent Mr. Huidekoper another letter stating that although it was his understanding that the landlord would not agree to a "three-year option," Mr. Huidekoper had indicated to Mr. Sharony that the tenant "would be allowed a right of first refusal as to any bona fide lease offers received by the Landlord regarding the leased premises prior to expiration of the initial five-year term." Mr. Sharony then stated that Dr. Hendrix "believe[d], as I do, and as you indicated, that this is a 'closed deal.'"

Other discussions were held between the parties, and other correspondence were sent from Mr. Sharony to Mr. Huidekoper, as well as from Mr. Sharony to Ms. Jane Smith, who acted as an attorney for Scott Hudgens. On July 1, Ms. Smith sent a letter to Mr. Sharony, stating that Scott Hudgens had agreed to lease the space to 20/20 Vision on the terms set out in various of the letters between the parties "subject to negotiation, execution and delivery of a written lease."

On July 23, a copy of the proposed lease was sent to Mr. Sharony from Ms. Smith. On August 21, Mr. Sharony sent a letter to Mr. Henry Neal, who had assumed Mr. Huidekoper's duties with the Scott Hudgens Company. In this letter, Mr. Sharony stated that the purpose of the letter was to confirm a telephone conversation in

which Mr. Sharony had been advised that "the landlord had approved being responsible for the interior tenant improvements, as indicated in the Lee McCullough drawing dated June 9, 1985, a copy of which I furnished you. Your stipulation was, however, that there would not be any unusual wall construction involved." In this letter, Mr. Sharony also referred to some other "loose ends" remaining.

One of these "loose ends" concerned the amount of space being rented, and the parties subsequently agreed to increase the rental space from 1,475 square feet to 1,680 square feet.

On September 6, Ms. Smith sent Mr. Sharony a letter containing copies of a "revised lease for 20/20 Vision Center at Avondale Mall." In this letter, Ms. Smith requested that three provisions be added to the lease, one of which was a "Lease Outline Drawing to show glass store front as Landlord's expense." On September 19, Mr. Sharony sent Ms. Smith a letter containing "three fully executed copies of the revised lease for 20/20 Vision Center at Columbia Mall." There were also several documents attached to the lease, as well as various corrections initialed by the tenant. In this letter, Mr. Sharony requested that Ms. Smith forward to him "one fully executed original of the lease."

The lease exchanged between Mr. Sharony and Ms. Smith on September 6 and September 19 contained a clause providing: "The submission of this document for examination does not constitute an offer to lease and this lease becomes effective only upon execution and delivery thereof by Landlord and Tenant."

The appellant presented testimony from Dr. Hendrix' wife, who is a real estate agent who was involved in these negotiations. She testified that subsequent to September 19, she spoke on the telephone with Mr. Hudgens, and he refused to build the glass wall, stating, " 'If you don't like it, I will let you out of the lease.' " Mrs. Hendrix further testified that Mr. Hudgens also told her that he had found a tenant to whom he could lease the property at a rental per square foot 50% higher than what the appellant had agreed to pay, and that this prospective tenant would not require the appellee to make any interior improvements in the leased premises.

On October 1, 1985, the appellant filed the present complaint against the appellee, alleging that the various writings between the parties constitute a lease agreement and that the appellee has breached this agreement by refusing to replace the existing brick store front with a glass wall. In Count 1, the appellant alleges that it has "spent considerable efforts and a significant sum of money" in reliance on the lease agreement "in order to perform duties and obligations imposed upon plaintiff by the Lease Agreement, including duties relating to construction, improvements, and signage of the leased premises." Accordingly, the appellant seeks actual and punitive dam-

ages, as well as attorney fees. In Count 2, the appellant seeks a decree of specific performance requiring the appellee to perform its obligations under the lease agreement, and the appellant also requests preliminary and permanent injunctive relief enjoining the appellee from "leasing, encumbering, transferring, or otherwise conveying the leased premises, or any interest or portion therein . . ." The appellant filed a separate motion for a preliminary injunction, and the appellant later amended this motion by requesting that the appellee be ordered to comply with the terms of the lease agreement, including the construction of the contested glass wall.

After conducting a hearing on the appellant's application for an interlocutory injunction, the trial court entered an order dismissing the complaint. In this order, the court initially noted that the appellant's request for specific performance was an "alternative count" in the complaint,[1] and that, in order to determine whether the plaintiff was entitled to such equitable relief, it was necessary for the court to decide "whether a lease did in fact exist, thus deciding the issue on its merits."[2] The trial court found that although various representatives of the appellant and appellee engaged in conversations and exchanged correspondence in negotiating the terms of a contemplated lease, no writing was signed by the appellee, and there is no evidence that any person acting on behalf of the appellee possessed any written authority to bind the appellee. On this basis, the trial court concluded that any documents purporting to constitute a contract would be unenforceable under the Statute of Frauds, since none of these writings was signed by the appellee or another person shown to have written authority to bind him. The trial court further concluded that any expenditures made by the appellant preparatory to moving into the shopping center would not constitute partial performance taking the contract out of the Statute of Frauds, and that the writings between the parties consisted of nothing more than offers and counter-offers,

---

[1] The appellant's prayers for damages and specific performance are not couched as alternative requests for relief in the pleadings. However, it is axiomatic that one cannot obtain specific performance if damages recoverable at law would be an adequate compensation for non-performance of the contract, and it is also true that the appellant could not obtain both a decree of specific performance and damages which would result from non-performance.

[2] A trial judge may, of course, adjudicate an ultimate issue of fact at an interlocutory-injunction hearing without such adjudication being conclusive between the parties on the final trial. See *Carter v. Puckett*, 237 Ga. 494 (228 SE2d 878) (1976). But OCGA § 9-11-65 (a) (2) authorizes the trial judge to consolidate the trial of the action on the merits with the hearing of the application for interlocutory injunction — so long as this does not abrogate any rights of the parties which they may have to trial by jury, and so long as there do not remain unresolved issues of fact after the hearing. *Cawthon v. Douglas County*, 248 Ga. 760 (286 SE2d 30) (1982). As held in *Cawthon*, although there is no constitutional or statutory right to a jury trial in an equity case, § 9-11-65 (a) (2) does preserve the right to jury trial as to claims for damages when tried with an equity case.

since at no time was there a meeting of the minds sufficient to form a binding contract. For these reasons, the trial court ordered that the complaint be dismissed.

1. It is true that " ' "[i]n order to make any sort of a contract the offer of the seller must be accepted by the purchaser, unequivocally, unconditionally, and without variance of any sort . . . An absolute acceptance of a proposal, coupled with a condition, will not be a complete contract; because there does not exist the requisite mutual assent to the same thing in the same sense. Both parties must assent to the same thing, in order to make a binding contract between them." (Cit.) . . .' *Weldon v. Lashley*, 214 Ga. 99, 101-102 (103 SE2d 385) (1958); *Donohue v. Monroe*, 147 Ga. App. 835, 836 (250 SE2d 571) (1978)." *Harry Norman & Assoc. v. Bryan*, 158 Ga. App. 751, 752 (282 SE2d 208) (1981).

However, in *F. & W. Grand Five-Ten-Twenty-Five Cent Stores v. Eiseman*, 160 Ga. 321 (127 SE 872) (1925), it was held that the acceptance by the landlord's agent of the terms and conditions of the tenant's offer of a lease resulted in the formation of a binding contract, even though in accepting the offer the landlord's agent advised the tenant to "get in touch with . . . the owners' attorneys, for the preparation and consummation of the lease." 160 Ga. at p. 324. See also *Shell Petroleum Corp. v. Jackson*, 47 Ga. App. 667 (171 SE 171) (1933).

2. The Statute of Frauds is codified at OCGA § 13-5-30, and this statute provides that in order to be enforceable, various types of agreements must be "in writing and signed by the party to be charged therewith or some person lawfully authorized by him." "Any agreement that is not to be performed within one year from the making thereof" is required by the Statute of Frauds to be in writing. OCGA § 13-5-30 (5). In line with this provision, it has been held that a contract creating the relation of landlord and tenant for a period in excess of one year must be in writing. E.g., *Butler v. Godley*, 51 Ga. App. 784, 786 (1) (181 SE 494) (1935) and cits.[3]

3. The "equal dignity" rule, codified at OCGA § 10-6-2, provides in part, "The act creating the agency shall be executed with the same formality (and need have no more) as the law prescribes for the execution of the act for which the agency shall be created." Accordingly, it has been held that since a contract creating the relation of landlord and tenant for a period in excess of one year must be in writing, the

---

[3] As pointed out in *Butler*, there is another statute, in addition to the Statute of Frauds, requiring a contract creating the relation of landlord and tenant for a period in excess of one year to be in writing. OCGA § 44-7-2 (a), which is the successor to § 61-102 of the Code of 1933, provides, "Contracts creating the relation of landlord and tenant for any time not exceeding one year may be by parol."

authority of an agent to execute such a contract likewise must be in writing. E.g., *Byrd v. Piha*, 165 Ga. 397 (2) (141 SE 48) (1927).

4. "However, it is also the law in this state that while a written instrument may have been executed by an agent not having any authority in writing to do so or not having been ratified by an act of comparable dignity, the principal may nevertheless be estopped by his acts from denying the authority of his agent. *Ferguson v. Carter*, 208 Ga. 143 (65 SE2d 600) [1951]; *McCalla v. American Freehold &c. Co.*, 90 Ga. 113 (3) (15 SE 687) [1982]; *Morris v. Battey*, 28 Ga. App. 90 (110 SE 342) [1922].

" 'The authority of an agent in a particular instance need not be proved by an express contract; it may be established by the principal's conduct and course of dealing, and if one holds out another as his agent, and by his course of dealing indicates that the agent has certain authority, and thus induces another to deal with his agent as such, he is estopped to deny that the agent has any authority which, as reasonably deducible from the conduct of the parties, the agent apparently has. *Germain Co. v. Bank of Camden County*, 14 Ga. App. 88 (80 SE 302); *Patterson v. Southern R. Co.*, 41 Ga. App. 94 (1) (151 SE 818).' *Equitable Credit Corp. v. Johnson*, 86 Ga. App. 844, 847 (72 SE2d 816). See also *National Pecan Groves v. Redmond*, 42 Ga. App. 712 (157 SE 536)." *Atlanta Biltmore Hotel Corp. v. Martell*, 118 Ga. App. 172, 173 (2) (162 SE2d 815) (1968).

5. But, there are other cases which hold that " '(o)ne entering into (such a) contract executed by an agent in behalf of a purported principal is charged with notice that the agent's authority to execute the (agreement) is required by law to be in writing and is under a duty to inquire and ascertain whether such written authority exists and what the limits of the authority are, and such person is guilty of negligence in failing to make such an inquiry.' *Nalley v. Whitaker*, 102 Ga. App. 230 (4) (115 SE2d 790) (1960)." *Shivers v. Barton & Ludwig*, 164 Ga. App. 490, 492 (296 SE2d 749) (1982).[4]

6. Were it not for the existence of one clause in the proposed lease agreement in this case, we would be inclined to hold that there exist triable issues of fact on questions as to whether the appellant's offer was accepted by the appellee so that a binding contract was formed — as well as whether the appellee is estopped to deny his agent's lack of written authority to enter into the contract, because the appellee had imbued the agent with apparent authority; or

---

[4] The decisions cited in Division 4 can be reconciled with the decisions cited in Division 5 only by holding the rule to be as follows: It is a question to be decided under the facts of each case as to whether the complaining party is barred from obtaining relief because of his or her negligence in not ascertaining whether an agent, imbued by the principal with apparent authority, had actual, written authority to enter into the contract.

whether the appellant's negligence in not inquiring into the agent's authority bars the appellant's requests for relief.[5]

However, in view of the clause in the proposed lease agreement between the parties, providing that the lease would become effective "only upon execution and delivery by Landlord and Tenant," we must agree with the trial court's conclusion that a binding, written agreement was never consummated.

7. However, we hold that the trial court erred in dismissing the complaint, in that there do exist triable issues of fact on the question of whether the appellant is entitled to relief under the doctrine of promissory estoppel.[6]

A discussion of that doctrine, and of its interplay with the Statute of Frauds, is found in 15 Ga. L. Rev. 204, Promissory Estoppel and the Georgia Statute of Frauds (1980).

"[T]he doctrine of promissory estoppel has been adopted in Georgia. See *General Communications Service v. Ga. Public Service Commission*, 244 Ga. 855, 856 (262 SE2d 96) (1979); *Pethel v. Waters*, 220 Ga. 543, 552 (140 SE2d 252) (1965). We note that existing law was recently reaffirmed by the enactment of [OCGA § 13-3-44 (a)], which provides: 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise . . .' " *Insilco Corp. v. First Nat. Bank of Dalton*, 248 Ga. 322-323 (1) (283 SE2d 262) (1981). Section 13-3-44 (a) goes on to provide, "The remedy granted for breach may be limited as justice requires."[7]

*Judgment reversed. All the Justices concur.*

---

[5] See footnote 4, supra.

[6] Although the appellant does not raise a promissory-estoppel argument as such, the appellant does argue that the appellee is estopped to deny that his agent had authority to enter into the lease agreement. In any event, a complaint should not be dismissed unless it appears that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Our holding in Division 7 is simply that there are a set of facts which, if proved, would entitle the appellant to relief.

[7] The usefulness of this doctrine in avoiding injustice is demonstrated by the facts of cases such as this, in that it could not be said that the money expended by the appellant preparatory to moving into the mall constituted a part performance taking the case out of the Statute of Frauds.

Under OCGA § 13-5-31 (3), the provisions of the Statute of Frauds do not extend to cases "[w]here there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance."

"The part performance required by [OCGA § 13-5-31 (3)], however, must be essential to the contract, that is, required by its terms, such that a benefit is conferred upon the [promisor], with a consequent loss to the [promisee] which renders the court's refusal to enforce the contract tantamount to a fraud upon the [promisee]. [Cits.]" *Hudson v. Venture Indus.*, 243 Ga. 116, 118 (252 SE2d 606) (1979).

136

*Charles C. Pritchard,* for appellant.
*Weekes & Candler, Gary M. Sams, Mark D. Welsh,* for appellee.