S95G1819. PEMBROKE STATE BANK et al. v. WARNELL et al.

(471 SE2d 187)

HUNSTEIN, Justice.

We granted certiorari in this case to consider whether the Court of Appeals in *Pembroke State Bank v. Warnell*, 218 Ga. App. 98 (461 SE2d 231) (1995) correctly analyzed and applied this Court's decision in *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674 (308 SE2d 544) (1983).

This appeal involves four of the nine members of the Warnell family who are minority shareholders in Pembroke State Bank: Carolyn Warnell Bryan and Dorothy Warnell and their nephews, Herbert and Brooks Warnell. Ms. Warnell is an invalid; Bryan has her power of attorney. In 1990, Herbert and Brooks, along with two other relatives not involved in this appeal, retained attorney Noel Osteen to institute a lawsuit against Pembroke State Bank, its officers, and directors ("Pembroke"), arising out of a stock dispute. It is uncontroverted that Osteen was not retained by Bryan or Ms. Warnell. The suit filed by Osteen named as plaintiffs only the four Warnells who had retained him.

Pembroke's attorneys, Johnson and Brown, entered into negotiations with Osteen to settle the stock dispute. The proposal was that Pembroke would purchase plaintiffs' shares in the bank. It is uncontroverted, however, that no agreement in that regard could be arranged unless Pembroke could purchase at least 80 percent of the minority shareholders' stock. Because Bryan and Ms. Warnell between them held 43 percent of the minority stock, the parties all recognized that no agreement was possible without the participation and approval of Bryan and Ms. Warnell. Osteen proposed to meet with Bryan and all the minority shareholders to negotiate mutually-agreeable terms. Bryan, however, did not want to leave her sister in order to attend personally. In her stead, the meetings were attended either by Lewis, Bryan's attorney, or Haynes, a family friend, who relayed the developments in the negotiations to Bryan and conveyed Bryan's position on these developments to the others engaged in the negotiations.

In the negotiations that ensued, it is uncontroverted that Pembroke's attorneys knew Bryan and Ms. Warnell were not named plaintiffs in the lawsuit filed by Osteen. It is also uncontroverted that Lewis, Bryan's attorney, was present at some meetings between Osteen and Johnson, Pembroke's attorney. It does not appear from the evidence adduced at trial that Johnson ever directly asked Osteen or that Osteen ever directly represented to Johnson that he (Osteen) was the attorney for Bryan and Ms. Warnell.

When settlement seemed imminent in March 1991, Osteen contacted Bryan directly by telephone to discuss the terms that had been negotiated, and obtained her verbal agreement to be bound by that settlement. It is uncontroverted that this is the sole occasion on which Osteen spoke directly to Bryan; Osteen had no communications of any nature with Ms. Warnell. Thereafter, a dispute arose over the terms of the March 1991 agreement and the matter was presented to the superior court in September 1992, which ordered that all of the unnamed minority shareholders be added as plaintiffs. Osteen then contacted Lewis about adding Bryan and Ms. Warnell and then waited until he received written notification from Haynes in November before filing a motion to add Bryan and Ms. Warnell. The letter Haynes sent Osteen made it clear that Bryan and Ms. Warnell had agreed to participate based on the understanding that the action was "an effort to enforce the [March 1991] settlement." It is uncontroverted that no order allowing the motion to add these parties as plaintiffs was ever entered.

During the pendency of the litigation to enforce the March 1991 settlement agreement, Osteen and Johnson continued their negotiations in an effort to resolve the stock dispute. In February 1993, Osteen proposed certain terms to Johnson which the attorneys thought would be satisfactory to all parties. After discussions with Brooks Warnell and due to concerns special to him, a provision was inserted in the agreement to address those concerns and obtain his consent, which the attorneys thought would have a persuasive effect on the decision of Bryan and Ms. Warnell. However, unlike the March 1991 agreement, Osteen did not contact Bryan to obtain her personal consent to the agreement. Rather, Osteen communicated solely with Haynes, the family friend. Johnson knew Osteen had not cleared the matter with Bryan personally. When a formal document was drafted, it was signed by Herbert Warnell and other minority shareholders, but Brooks Warnell, Bryan, and Ms. Warnell refused to sign. Herbert subsequently withdrew his consent to the agreement.

Pembroke then sought to enforce the agreement. Osteen moved for and was granted an order allowing him to withdraw as counsel for various parties including Bryan and Ms. Warnell; the propriety of that order was later challenged by Bryan and Ms. Warnell. Based on

the special verdict returned by the jury, the trial court entered judgment finding that Brooks and Herbert were bound by the agreement but that Bryan and Ms. Warnell were not. The Court of Appeals affirmed the trial court's ruling as to Bryan and Ms. Warnell, but reversed as to Brooks and Herbert. Because the trial court's judgment was correct under the evidence adduced and the law set forth in *Brumbelow v. Northern Propane Gas Co.*, supra, we affirm the Court of Appeals' ruling in part (as to Bryan and Ms. Warnell) and reverse in part (as to Brooks and Herbert).

1. There is no dispute over the existence or the terms of the February 1993 agreement. Rather, the dispute is whether Osteen had the authority to enter into that agreement on behalf of Herbert, Brooks, Bryan, and Ms. Warnell. Given that this is civil litigation between private parties, the controlling law to be applied is that set forth in *Brumbelow v. Northern Propane Gas Co.*, supra. In *Brumbelow*, this Court held

> Under Georgia law an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties. [Cits.] This authority is determined by the contract between the attorney and the client and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties. [Cits.] The authority may be considered plenary unless it is limited by the client and that limitation is communicated to opposing parties. [Cits.] Therefore, from the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client, and the client will be bound by the acts of his attorney within the scope of his apparent authority. The client's remedy, where there have been restrictions not communicated to the opposing party, is against the attorney who overstepped the bounds of his agency, not against the third party.

(Footnote omitted.) Id. at 674-675. We reaffirm our holding in *Brumbelow* as the law of this State. Under the facts in this case, the Court of Appeals erred by holding that the trial court improperly instructed the jury on the principles of *Brumbelow*.

2. Applying *Brumbelow* to the evidence that pertains to Herbert Warnell, the facts are clear that Herbert retained Osteen and was a named party in the litigation filed by Osteen; that Osteen was Herbert's attorney of record and had authority to negotiate and settle the

stock dispute on his behalf; and that Herbert agreed to the February 1993 settlement and indicated his agreement by signing the settlement document. Under *Brumbelow* Herbert was clearly bound by the acts of his attorney, Osteen, and accordingly is bound by the February 1993 settlement agreement. The Court of Appeals erred by finding to the contrary.

3. The facts regarding Brooks Warnell show that Brooks retained Osteen and was named a party plaintiff in the litigation filed by Osteen; and that Osteen was Brooks' attorney of record and had authority to negotiate and settle the stock dispute on his behalf. There were no limitations on Osteen's authority, other than that he obtain his client's agreement to the proposed terms. Although the testimony sharply conflicted whether that agreement had been obtained, the evidence was sufficient to support the judgment finding Brooks to be bound by the February 1993 settlement agreement. Accordingly, the Court of Appeals' opinion holding otherwise is reversed.

4. We turn now to Carolyn Warnell Bryan and Dorothy Warnell. As clearly stated in *Brumbelow*, the apparent authority of an attorney to enter into an agreement enforceable against his client "is determined by the contract between the attorney and the client and by instructions given the attorney by the client." Id. at 674. It follows that under *Brumbelow*, where there is no "contract," i.e., where there is no attorney-client relationship, an attorney can have no authority, apparent or otherwise, to enter into an agreement enforceable against one who is not a client.

Bryan testified at trial that Osteen was not her attorney; that she already had an attorney, Lewis; that she had Ms. Warnell's power of attorney; and that no one had Bryan's power of attorney. It is uncontroverted that Bryan did not participate in the retention of Osteen by the named plaintiffs or sign the retainer agreement. Nothing in Osteen's testimony reflects that he established an attorney-client relationship with Bryan and Ms. Warnell. Although Osteen testified that it was his "understanding" that he represented Bryan and Ms. Warnell and was their attorney, his testimony reveals that this "understanding" was based on statements and assurances from the named plaintiffs, not from any statements by Bryan, her representatives, or Ms. Warnell. There is nothing in the course of conduct between Osteen and Bryan which would establish an attorney-client relationship; rather, the course of conduct is entirely consistent with Bryan's position that she was operating independently of the named plaintiffs in negotiating terms with Osteen. The evidence revealed that in order for Osteen to effect a resolution of his clients' dispute with Pembroke, Osteen had to negotiate not only with Pembroke but also with Bryan and Ms. Warnell, given that there could be no agreement without their participation and consent. Insofar as Bryan and Ms. Warnell

were concerned, Osteen's role was that of "deal maker," not attorney.

The trial court in this case ruled in favor of Bryan and Ms. Warnell on the basis that because Osteen was not their "attorney of record," a limitation known by Pembroke's attorney, they could not be bound by the settlement agreement. We recognize that both *Brumbelow*, supra, and Uniform Superior Court Rule 4.12,[1] promulgated after our ruling in *Brumbelow*, speak in terms of "attorney of record." However, it is apparent from the facts in *Brumbelow* and from the purposes for which the Uniform Superior Court Rules were promulgated[2] that the use of "attorney of record" arose in a litigation context. "Attorney of record" has been defined as

> [t]he attorney for a party to an action who has appeared for him by a formal appearance, by pleading or making a motion for him, or by an oral statement of appearance in open court, and is in charge of the party's business and interests in the action.

Ballentine's Law Dictionary (3rd ed.). See also Black's Law Dictionary (4th ed.). Attorneys, however, are employed to handle a wide range of matters, many of which are transactional in nature and do not involve the filing of pleadings or other acts that would require an entry of appearance, USCR 4.2, or notification of representation. USCR 4.6. We hold that under *Brumbelow*, whether or not an action is pending in court, an attorney who has an attorney-client relationship with a party has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties.

Because the evidence adduced at trial established as a matter of law that no attorney-client relationship existed between Bryan and Ms. Warnell and attorney Osteen, the trial court properly held that Bryan and Ms. Warnell were not bound by the February 1993 agreement. The Court of Appeals' holding in this regard is accordingly affirmed.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Carley and Thompson, JJ., who concur in Divisions 1, 2, 3, and in the judgment.*

---

[1] Uniform Superior Court Rule 4.12 provides that "[a]n attorney of record has apparent authority to enter into agreements on behalf of his client(s) in civil actions."

[2] The Uniform Superior Court Rules were promulgated to "provide for the speedy, efficient and inexpensive resolution of disputes and prosecutions" in the superior courts of this state. Rule 1 Preamble.

DECIDED MAY 13, 1996 —
RECONSIDERATION DENIED JUNE 28, 1996.

*Glover & Davis, J. Littleton Glover, Jr.,* for appellants.

*Adams & Ellis, Ronald C. Berry, Tracy A. O'Connell, Brown & Livingston, Charles H. Brown, Alston & Bird, Ben F. Johnson III,* for appellees.