A03A1334, A03A1335. GRANGE MUTUAL CASUALTY COMPANY v. KAY; and vice versa.
(589 SE2d 711)

MIKELL, Judge.

Grange Mutual Casualty Company ("GMCC") appeals the trial court's order granting Gregory L. Kay's motion for summary judgment on his complaint to enforce an agreement reached in settlement of a claim for bodily injury suffered by his minor daughter, Laura Beth, in a vehicular collision. In Case No. A03A1334, we affirm but remand for a recalculation of prejudgment interest. In Case No. A03A1335, Kay cross-appeals the denial of his motion for summary judgment on the issue of attorney fees. We affirm that portion of the trial court's order and remand for the entry of judgment in favor of GMCC.

The record shows that on October 15, 1998, Laura Beth Kay and her mother, Beth Brown Kay, were involved in a collision with GMCC's insured, Fletcher Anthony Dove. Mr. and Mrs. Kay retained

attorney Stephen Carter to handle the family's claims arising out of the incident. On October 6, 2000, Carter delivered a settlement package to Sharon Jones, GMCC's claims representative, demanding $35,000 for Mr. and Mrs. Kay and $100,000 for Laura Beth. The letter stated in part, "Of course, Mr. and Mrs. Kay have the claim for Laura Beth's medical expenses which, according to the enclosed, appear to total $22,491.80." On October 13, Jones replied as follows: "This will confirm our phone conversation of this date. We have settled the Bodily Injury claim on your client, Laura Beth Kay for $57,892.00." Carter immediately acknowledged, in writing, receipt of Jones's letter and requested that GMCC's lawyer draft the appropriate documents to be filed in probate court to effectuate the settlement. GMCC referred the matter to the law firm of Myers & Stroberg.

On October 24, Carter wrote to the firm in response to its telephone inquiry concerning payment of the settlement, stating that the Kays desired a lump sum payment as opposed to a structured settlement and requesting that Myers & Stroberg prepare the probate court documents. Based on a second letter transmitted on the same day, however, it appears that GMCC wanted Carter to draft the documents, for which Carter planned to charge GMCC $150 per hour plus court costs. The following week, attorney W. Allan Myers called Carter and stated that his firm would draft the documents. During the conversation, Myers asked Carter how the funds should be apportioned with respect to Laura Beth's medical expenses. Carter replied that the settlement did not include those expenses, which were the subject of a civil action Carter had filed on behalf of Mr. and Mrs. Kay. On November 8, Myers wrote Carter a letter stating, in part, as follows:

> Confirming our telephone conversation of last week, it is our position that the agreement to pay $57,892.00 included all claims associated with the injuries to Laura Beth Kay, including the cost of medical expenses incurred. I understand that you have a different perspective of said settlement. Based upon our conversation it was apparent that it would serve no purpose for us to proceed with the preparation of the documents for probate court approval at this time.

On December 8, 2000, Greg Kay, as Laura Beth's next friend, sued to enforce the agreement and to recover interest and litigation expenses. The complaint was amended in March 2002 to show that the probate court had appointed Kay as Laura Beth's guardian and had approved the settlement, and Kay was substituted as plaintiff in

his capacity as guardian. Kay and GMCC filed cross-motions for summary judgment. The trial court granted Kay's motion in part, finding that the settlement agreement was enforceable and that Kay was entitled to prejudgment interest from the date that the probate court "could" have approved the settlement, or November 3, 2000. However, the court found that a bona fide controversy existed and denied Kay's demand for litigation expenses. GMCC appeals the grant of partial summary judgment to Kay, and Kay cross-appeals the denial of his motion with regard to litigation expenses.

### Case No. A03A1334

1. GMCC first claims that there could be no binding agreement as of October 13, the date GMCC agreed to settle, because no guardian had yet been appointed for the minor and the probate court had not yet approved the settlement. This argument is based in part on OCGA § 29-2-16 (e), which provides that "[i]f legal action has not been initiated and the net settlement is $10,000.00 or greater, the natural guardian must apply to become the legally qualified guardian and the proposed settlement must be submitted to the probate court for approval." According to GMCC, since the contract of a minor is voidable,[1] there could be no finality between the parties until probate court approval was secured. Therefore, GMCC contends, the agreement lacked the essential element of mutuality of consideration, "or, in other words, that one party cannot be bound where the other is not."[2] This argument is flawed. A minor's statutory exemption from contractual liability is a personal privilege which others may not assert as a defense.[3] Thus, GMCC cannot plead Laura Beth's minority as a defense to enforcement of the settlement agreement at issue.

GMCC's argument that the agreement is unenforceable because it predated the appointment of a guardian is based on *Lynn v. Wagstaff Motor Co.*[4] In that case, a father was killed in an automobile collision, and his widow signed a release of their children's wrongful death claims for a grossly inadequate consideration. She had not qualified as guardian before signing the release and brought suit to set it aside. We held that, "[a]s merely a natural guardian, a parent may not act as a representative of his child's property interests. To do this, he must qualify with the ordinary as guardian of the property. A

---

[1] OCGA § 13-3-20 (a).
[2] *Smith v. Smith*, 36 Ga. 184, 190 (1867).
[3] OCGA § 13-5-3; *Beckworth v. Beckworth*, 255 Ga. 241, 245 (2) (b) (336 SE2d 782) (1985); *Murphy v. Bank of Dahlonega*, 151 Ga. App. 264, 265 (1) (259 SE2d 670) (1979).
[4] 126 Ga. App. 516 (191 SE2d 324) (1972).

chose in action is property and a natural guardian has no more authority to sign it away than he would have to sell tangible property of the child."[5] *Lynn* is distinguishable. Here, Kay did not sign away his child's claims for a grossly inadequate consideration, and the probate court ultimately approved the sum. This situation is more akin to *Tillett v. Patel*,[6] where we held that a grandmother acting as her granddaughter's next friend in a wrongful death action had authority to bind the child to an attorney fee contract even though the grandmother had not been appointed guardian.[7] Distinguishing *Lynn*, we held that "[a] next friend cannot unreasonably surrender a minor's substantial rights. But the next friend must not be denied such necessary incidental powers as will facilitate the fair adjudication of the infant's rights."[8] The overriding principle in these cases is, of course, protection of the minor through judicial oversight. That has occurred here. The fact that judicial approval postdated the agreement does not render it unenforceable for lack of mutuality.[9] Moreover, the procedural protections afforded to minors by OCGA § 29-2-16 are intended for their benefit,[10] not for the benefit of third parties seeking to avoid contracts with them. For these reasons, we find no merit in GMCC's first enumerated error.

2. GMCC next argues that the trial court erred in finding that the parties agreed to all elements essential to the formation of a contract. Specifically, GMCC contends that the parties never agreed upon the terms for preparation of the probate court documents, including costs associated therewith. We disagree. In response to Kay's requests for admissions, attorney Myers admitted that he agreed to draft the documents. Even if he had not, however, our result would not change. A mutual, binding agreement was reached on October 13, 2000. Thereafter, the drafting of documents necessary to effectuate the settlement "may have been a condition of [the] performance but it was not an act necessary to acceptance of [the] offer to settle."[11] This enumeration is meritless.

---

[5] (Citations omitted.) Id. at 518.

[6] 192 Ga. App. 60 (383 SE2d 622) (1989).

[7] Id. at 60 (1).

[8] (Citations and punctuation omitted.) Id. at 60-61 (1).

[9] Additional cases upon which GMCC relies are factually inapposite. *Jones v. Quigley*, 169 Ga. App. 862, 863 (1) (315 SE2d 59) (1984), held that a real estate sales contract did not lack mutuality; *Saliba v. Saliba*, 202 Ga. 279, 282 (1) (42 SE2d 748) (1947), held that a guardian ad litem could not consent to probating a will which was revoked by the subsequent birth of a child.

[10] See, e.g., *Bacon v. Smith*, 222 Ga. App. 542, 544 (3) (474 SE2d 728) (1996) ("The protections of the ward's assets afforded by OCGA § 29-2-15 are certainly present upon the probate court's review and approval of the proposed settlement.").

[11] *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994). See also *Stacey v. Jones*, 230 Ga. App. 213, 215 (2) (495 SE2d 665) (1998).

3. GMCC argues that the trial court erred in refusing to consider the affidavit of its adjuster on the ground that it constituted parol evidence. GMCC argues that the affidavit was admissible to explain the ambiguity created by the term "bodily injury claim" in the adjuster's letter of October 13. In the affidavit, the adjuster states: "At no time was this offer made solely in consideration of a release of the personal injury claim of Laura Beth Kay, but always also included a release from the parents for their claim related to the medical expenses related to their minor daughter, Laura Beth Kay." But Carter's demand letter of October 6, 2000, states that Mr. and Mrs. Kay had the claim for their daughter's medical expenses. In addition, statutes and case law make clear that the right to recover damages for a child's medical expenses vests solely in the child's parents, while the right to recover damages for pain and suffering vests in the child, not the parent.[12] Therefore, any mistake as to the coverage of the agreement was unilateral.

> Where parties have reduced to writing what appears to be a complete and certain agreement, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the entire contract, and parol evidence of prior or contemporaneous representations or statements is inadmissible to add to, take from, or vary the written instrument. Parol evidence is admissible to demonstrate that both parties to an agreement were honestly mistaken as to the legal effect of the instrument, and may establish a question of fact over the scope of the agreement which is most appropriate for jury resolution. Such is not the nature of [GMCC's] testimony. [GMCC] does not seek a reformation of the settlement agreement so as to avoid a *mutually* unintended legal consequence of its execution. Instead, [GMCC] urges a total cancellation of the agreement so as to avoid [its] *unilateral* mistake.[13]

The trial court did not err in refusing to consider the proffered parol evidence.

4. GMCC complains that the trial court erred in awarding prejudgment interest beginning from the date the probate court "could" have approved the settlement. We agree. OCGA § 7-4-15 provides: "All liquidated demands, where by agreement or otherwise the sum

---

[12] OCGA § 19-7-2; *In re Ray*, 248 Ga. App. 45, 48 (3) (545 SE2d 617) (2001); *Kite v. Brooks*, 51 Ga. App. 531 (181 SE 107) (1935).

[13] (Citations and punctuation omitted.) *Watson v. Zurich-American Ins. Co.*, 221 Ga. App. 4, 5-6 (1) (470 SE2d 684) (1996).

to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them." GMCC did not become bound to pay the debt within the meaning of the statute until March 13, 2002, when the probate court issued an order approving the settlement.[14] Therefore, the judgment is remanded for the trial court to award prejudgment interest from March 13, 2002.

### Case No. A03A1335

5. Kay cross-appeals the denial of his motion for summary judgment on his claim for attorney fees. OCGA § 13-6-11 permits a plaintiff to recover attorney fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." But where a bona fide controversy exists, a recovery under this Code section is impermissible unless there is evidence that the defendant has acted in bad faith in the underlying transaction.[15] "While issues of stubborn litigiousness are normally for the jury, if there is a *bona fide* controversy, there can be no stubborn litigiousness as a matter of law."[16] In this case, whether or not the agreement included medical expenses was a bona fide controversy. We affirm the denial of Kay's motion on the issue of litigation expenses and remand for the entry of judgment in favor of GMCC on this issue.

*Judgment affirmed and case remanded. Johnson, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 14, 2003 — 

*Myers & Stroberg, W. Allan Myers,* for appellant.
*Stephen C. Carter,* for appellee.

<hr>

[14] See, e.g., *Hendricks v. Blake & Pendleton, Inc.,* 221 Ga. App. 651, 653 (2) (472 SE2d 482) (1996).

[15] *Latham v. Faulk,* 265 Ga. 107, 108 (2) (454 SE2d 136) (1995).

[16] (Citation omitted.) *Trust Co. Bank of Augusta v. Henderson,* 185 Ga. App. 367, 372 (4) (364 SE2d 289) (1987), aff'd, 258 Ga. 703 (373 SE2d 738) (1988). See generally *Carter v. Allstate Ins. Co.,* 197 Ga. App. 738, 743 (4) (399 SE2d 500) (1990).