A06A0818. ANAYA v. COELLO.
(632 SE2d 425)

ELLINGTON, Judge.

The guardian[1] of Bicente Aguilera Moreno ("Aguilera"), an incapacitated adult, filed this personal injury action in the Superior Court of Cherokee County against Zeferino Lucio Anaya. After a jury verdict in favor of Aguilera, Anaya appeals from the trial court's order denying his motion to enforce a settlement and to dismiss the action.

---

[1] The probate court appointed Aguilera's father, Martin Aguilera, as Aguilera's first guardian on March 18, 2002. The probate court later substituted Joaquin Coello as Aguilera's guardian, and the trial court substituted Coello as the plaintiff in this action on May 3, 2004.

Because the attorney who purported to agree to the settlement of Aguilera's claim lacked the authority to do so, we affirm.

A trial court's order on a motion to enforce a settlement agreement based on undisputed facts is subject to de novo review. *Jones v. Frickey*, 274 Ga. App. 398, 400 (618 SE2d 29) (2005), aff'd, *Frickey v. Jones*, 280 Ga. 573 (630 SE2d 374) (2006); *Superglass Windshield Repair v. Mitchell*, 233 Ga. App. 200 (504 SE2d 38) (1998).

The record reveals the following undisputed facts. On July 15, 2000, with Aguilera as his passenger, Anaya was driving an automobile insured by Atlanta Casualty Company when a serious collision occurred. Aguilera sustained severe head trauma and other injuries and lapsed into a coma. Within a month, Aguilera's family retained a lawyer, Noah Rosner, and Rosner contacted Atlanta Casualty demanding the personal injury policy limit of $15,000. Atlanta Casualty claims adjuster Shanda Barnes handled the file. Barnes was aware that Aguilera was an adult, had been in a coma since the accident, and was not yet represented by a legal guardian. Barnes quickly agreed to tender the policy limit, and Rosner directed her to make the check payable to Elsa Ramirez, Aguilera's wife. On August 25, 2000, Atlanta Casualty prepared a check made payable jointly to Ramirez and Rosner's law firm but retained possession of the check pending the appointment of a guardian for Aguilera. Rosner did not initiate guardianship proceedings at that time, however, because the family hoped Aguilera would recover from his injuries.

After about one year, Aguilera emerged from the coma, but brain damage left him incapacitated. By this time, Rosner had left the firm, and his former partner, Ralph Perales, had taken over the Aguilera matter. On January 14, 2002, Aguilera's father and sister petitioned for the appointment of a guardian of Aguilera's person and property. The probate court appointed Aguilera's father, Martin Aguilera, as the guardian of Aguilera's person and property on March 18, 2002. Perales contacted Barnes, demanding payment of the $15,000 policy limit. Although Atlanta Casualty never denied Aguilera's claim, the parties never entered into a written settlement agreement and Atlanta Casualty never tendered payment. On May 21, 2002, Perales sent Atlanta Casualty a certified letter demanding payment by May 27, 2002. Perales filed Martin Aguilera's action on June 12, 2002.[2] The trial court entered the order denying Anaya's motion to enforce settlement and to dismiss the case on January 20, 2005.[3]

---

[2] Martin Aguilera filed the original action in the State Court of Cherokee County and later filed this renewal action in the superior court.

[3] We note that a completely rewritten Title 29, Guardian and Ward, took effect July 1, 2005. Ga. L. 2004, p. 161. Unless otherwise noted, the Code sections cited in this opinion are those in effect at the time of the alleged settlement.

Anaya contends that the courts should not permit "attorney Perales to avoid a legitimate settlement agreement previously made by his former partner on the technical grounds that a guardian had not yet been appointed at the time the settlement was reached." Anaya contends that the appointment of a guardian after parties settle a claim does not invalidate the settlement agreement, citing *Grange Mut. Cas. Co. v. Kay*, 264 Ga. App. 139 (589 SE2d 711) (2003). Anaya argues, "a settlement was reached between a representative of [Atlanta Casualty] and the lawyer who indicated he represented an incapacitated individual shortly after the accident." Because Rosner had at least apparent authority to settle Aguilera's claim in August 2000, Anaya maintains, he is entitled to enforce the settlement.

It is fundamental that a client's relationship to an attorney is that of principal and agent. *Newell v. Brown*, 187 Ga. App. 9, 13 (369 SE2d 499) (1988). In order that acts of an agent be binding on his alleged principal, a principal and agent relationship must be proved and it must be established that agent acted within scope of authority. *Richie & Co. v. Cohen*, 65 Ga. App. 30, 34 (14 SE2d 603) (1941); *Scott v. Kelly-Springfield Tire Co.*, 33 Ga. App. 297, 297-298 (4) (125 SE 773) (1924). See also OCGA §§ 10-6-1 (how agency created); 10-6-51 (how far principal bound by acts of agent); Restatement (3d) of Agency § 1.01 (agency defined). Under Georgia law, regardless of whether an action is pending in court, "an attorney who has an attorney-client relationship with a party has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties." (Citation and punctuation omitted.) *Pembroke State Bank v. Warnell*, 266 Ga. 819, 823 (4) (471 SE2d 187) (1996). See *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 676 (308 SE2d 544) (1983) (accord).

> This authority is determined by the contract between the attorney and the client and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties . . . unless [the authority] is limited by the client and that limitation is communicated to opposing parties.

(Citation omitted.) *Pembroke State Bank v. Warnell*, 266 Ga. at 821 (1). But "where there is no contract, i.e., where there is no attorney-client relationship, an attorney can have no authority, apparent or otherwise, to enter into an agreement enforceable against one who is not a client." (Punctuation omitted.) Id. at 822 (4). Thus, an opposing

party may not enforce a settlement agreement negotiated by an attorney who never established an attorney-client relationship with the alleged client. Id.

In this case, it is undisputed that Aguilera did not retain Rosner before he was incapacitated. Further, it is undisputed that, at the time of the purported settlement, no guardian had been appointed for Aguilera, and, therefore, no one with the capacity to do so had retained Rosner to pursue Aguilera's personal injury claim.[4] *Levenson v. Oliver*, 202 Ga. App. 157, 159 (2) (413 SE2d 501) (1991). Because the undisputed evidence adduced established as a matter of law that no attorney-client relationship existed between Rosner and Aguilera, the trial court properly held that Anaya was not entitled to enforce the purported settlement. *Pembroke State Bank v. Warnell*, 266 Ga. at 822-823 (4).

Anaya's reliance on *Grange Mut. Cas. Co. v. Kay* is misplaced. In that case, a child's father entered into a settlement agreement on behalf of the child before the probate court appointed the father the guardian of the child's person and property. 264 Ga. App. at 140-141. Thereafter, the probate court approved the settlement. Id. After the tortfeasor's insurer then refused to execute the settlement, the father sued to enforce the agreement. Id. We rejected the argument of the tortfeasor and his insurer that the agreement was unenforceable for lack of mutuality. Id. at 141-142 (1). We held that the father could enforce the agreement because he had been the child's natural guardian at the time the settlement was reached,[5] because the probate court approved the settlement, and because "the procedural protections afforded to minors by OCGA § 29-2-16 are intended for their benefit, not for the benefit of third parties seeking to avoid contracts with them." (Footnote omitted.) Id. at 142 (1). By contrast, the person whose claim was compromised in this case was a mentally

---

[4] Only a legally appointed guardian may settle an incapacitated adult's disputed claim for $10,000 or greater, and the guardian must obtain probate court approval of the settlement. Former OCGA § 29-2-16 (power of a guardian of the property to compromise disputed claims; circumstances requiring probate court approval of settlements); former OCGA § 29-5-1 (conditions for appointment of guardian for person or property of incapacitated adult); former OCGA § 29-5-4 (powers of a guardian of the property of an incapacitated adult); former OCGA § 29-5-6 (procedure for appointment of guardian for an incapacitated adult); former OCGA § 29-5-7 (unless otherwise provided, the appointment of a guardian of the property of an incapacitated adult removes from the ward the power to make contracts and to dispose of the ward's personal property); *Rowen v. Estate of Hughley*, 272 Ga. App. 55, 57 (1) (611 SE2d 735) (2005) (powers of a probate court in matters involving the settlement or compromise of claims by a guardian).

[5] See OCGA §§ 29-1-1 (12) (effective July 1, 2005) ("natural guardian" means "an individual defined by the provisions of Code Section 29-2-3"); 29-2-1 (effective July 1, 2005) (kinds of guardians for minors, including natural guardians); 29-2-3 (b) (effective July 1, 2005) (in general, "each parent shall be the natural guardian of any minor child of the parent").

incapacitated adult, not a minor whose parents are deemed his "natural guardians," and the probate court never approved the settlement. Contrary to Anaya's argument, *Grange Mut. Cas. Co. v. Kay* does not support the proposition that a tortfeasor may enforce a settlement agreement his insurance company enters into with family members of an incapacitated adult for whom a guardian of the property is not appointed until after the settlement is reached.

Because Anaya was not entitled to enforce the purported settlement, we affirm the trial court's ruling.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED MAY 25, 2006 — 

*Decker, Hallman, Barber & Briggs, W. Winston Briggs,* for appellant.

*Perales & Fernandez, Ralph Perales,* for appellee.