**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 4, 2014**

# In the Court of Appeals of Georgia

A13A1809. MORI LEE v. JUST SCOTT DESIGNS, INC.

MILLER, Judge.

Just Scott Designs, Inc., d/b/a Frills 'N Fancies, ("Just Scott") brought this action against Mori Lee, LLC alleging that Mori Lee breached a settlement agreement and seeking specific performance.[1] The parties filed cross-partial motions for summary judgment on the issue of the existence of a settlement agreement, and the binding effect thereof. The trial court granted Just Scott's motion and denied Mori Lee's motion. Mori Lee appeals from that order, contending that there was no binding settlement agreement. For the reasons that follow, we affirm the trial court's denial

---

[1] Just Scott also alleged that Mori Lee breached a contract and committed fraud.

of Mori Lee's partial motion for summary judgment and reverse the trial court's grant of Just Scott's partial motion for summary judgment.

> On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to a judgment as a matter of law.

(Punctuation and citation omitted.) *Capital Color Printing, Inc. v. Ahern*, 291 Ga. App. 101, 102 (661 SE2d 578) (2008).

So viewed, the record shows that Just Scott is in the business of selling ladies formal wear at its retail store in Statesboro, Georgia. Morie Lee is an out-of-state manufacturer and distributor of ladies formal wear, including prom and wedding dresses. Over the course of several years, Just Scott purchased approximately 1200 dresses from Mori Lee. Just Scott ordered both prom and wedding dresses pursuant to Mori Lee's policy that a retailer order both lines of dresses if the retailer sold both types of dresses.

In early 2011, Just Scott ordered a number of prom and wedding dresses pursuant to Mori Lee's policy. After placing the order, Just Scott discovered that Mori Lee had allowed some retailers to be exempt from its requirement that the retailer buy a wedding dress if it ordered a prom dress. In May 2011, more than five

days after receiving its order of prom and wedding dresses, Just Scott returned the bridal packages and sent an email to Mori Lee explaining that it wished to rescind its order of wedding dresses, that it had returned the dresses, and that it expected a refund. In its email, Just Scott stated that Mori Lee's sales representative had provided incorrect information that it was required to purchase both wedding and prom dresses from Mori Lee.

In response, Mori Lee stated that the sales representative accurately conveyed Mori Lee's policy, it would not accept unauthorized returns,[2] and it would refer Just Scott's account for legal action if full payment for the dresses was not received within seven days. After an exchange of several more emails, Mori Lee informed Just Scott that it was proceeding with the collection of $2,182.54 – the amount owing for the wedding dresses – and the matter had been sent to the company's attorney.

The Vice President of Operations for Mori Lee averred that it never actually hired an attorney to collect on the account, but rather, it hired a collection agency, Account Management Systems ("AMS"). In August 2011, Just Scott was contacted by the Law Offices of Ross Gelfand, which had been retained by AMS, regarding an

---

[2] Mori Lee's return policy provided that all returns must be made within five days of receipt.

attempt to collect the amount owed to Mori Lee. Just Scott contacted its attorney, who worked with Ross Gelfand to settle the dispute. Just Scott's attorney made an offer to Ross Gelfand to provide full payment of the debt in exchange for becoming a distributor of Mori Lee's prom dresses without the requirement to order and sell Mori Lee's wedding dresses. This offer was communicated from Ross Gelfand to AMS, and AMS agreed to the settlement terms. Just Scott's attorney then sent Ross Gelfand a letter, dated October 19, 2011, memorializing the purported settlement agreement. A check for $2,182.54 was enclosed with that letter, along with instructions that if Ross Gelfand disputed any of the terms of the agreement, it should not negotiate the enclosed check, because negotiation of the check would constitute confirmation of the settlement terms. The $2,182.54 check, which was made payable to Mori Lee, was subsequently deposited.

Mori Lee subsequently received a check for $1,527.70, after deduction of AMS's fee, and representatives from Mori Lee claimed that they did not learn of the settlement agreement until sometime in December 2011. The Vice President of Operations for Mori Lee averred that Mori Lee was not involved in the settlement discussions between AMS and its attorney, Ross Gelfand. The Vice President also stated that, had he been asked, he would not have agreed to waive Mori Lee's policy

4

requiring Just Scott to purchase both prom and wedding dresses. Mori Lee subsequently refused to ship an order placed by Just Scott, and the instant lawsuit ensued.

1. On appeal, Mori Lee contends that the trial court erred in granting Just Scott's partial motion for summary judgment and denying its partial motion for summary judgment because the evidence showed that Ross Gelfand did not have the authority to enter into a distributorship agreement or change the company's purchase policy. Since factual questions remain, we conclude that neither party was entitled to summary judgment.

"As a general rule, the question of authority to do an act, when it is to be determined from disputed facts or undisputed facts from which conflicting inferences may be drawn, must be decided by the jury as a question of fact or as a question of mixed fact and law." (Citation omitted.) *Atlanta Limousine Airport Svcs., Inc. v. Rinker*, 160 Ga. App. 494, 495 (1) (287 SE2d 395) (1981).

> An agency relationship may arise by implication as well as by express authority, and agency may be proved by circumstantial evidence. Agency may result where one party has apparent authority to affect the legal relations of another party by transactions with a third party, but it must be emphasized that apparent authority to do an act is created as to a third person when the statements or conduct of the alleged principal

5

reasonably cause the third person to believe that the principal consents to have the act done on his behalf by the purported agent.

(Citations and punctuation omitted.) *Hinely v. Barrow*, 169 Ga. App. 529, 530 (313 SE2d 739) (1984). A special agency can arise when one person, expressly or by implication, authorizes another to do a single act on his or her behalf. See *Lewis v. Citizens & Southern Nat. Bank*, 139 Ga. App. 855, 858 (1) (b) (229 SE2d 765) (1976). Under OCGA § 10-6-50, the scope of a special agent's authority

shall be construed to include all necessary and usual means for effectually executing it. Private instructions or limitations not known to persons dealing with a general agent shall not affect them. In special agencies for a particular purpose, persons dealing with the agent should examine his authority.

An agent's authority need not be proved by an express contract. *20/20 Vision Center, Inc. v. Hudgens*, 256 Ga. 129, 134 (4) (345 SE2d 330) (1986). Rather, an agent's authority

may be established by the principal's conduct and course of dealing, and if one holds out another as his agent, and by his course of dealing indicates that the agent has certain authority, and thus induces another to deal with his agent as such, he is estopped to deny that the agent has any authority which, as reasonably deducible from the conduct of the parties, the agent apparently has.

(Citation and punctuation omitted.) Id.

6

It is well-established that an attorney-client relationship is that of a principal and agent. See *Anaya v. Coello*, 279 Ga. App. 578, 580 (632 SE2d 425) (2006). "In order that acts of an agent be binding on his alleged principal, a principal and agent relationship must be proved and it must be established that [the] agent acted within [the] scope of [his] authority." (Citations omitted.) Id. Additionally,

> an attorney who has an attorney-client relationship with a party has apparent authority to enter into [a settlement] agreement on behalf of his client and the agreement is enforceable against the client by other settling parties. This authority is determined by the contract between the attorney and the client and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties unless the authority is limited by the client and that limitation is communicated to opposing parties.

(Citations and punctuation omitted.) Id.

Here, there are questions of fact regarding Ross Geland's authority to enter into a settlement agreement on behalf of Mori Lee. While Mori Lee representatives averred that Mori Lee did not hire Ross Geland as its attorney and that Ross Geland was not authorized to enter into the distributorship agreement at issue, an agency relationship was neverthelss created as a matter of law because the evidence showed that Mori Lee never formally assigned the right to collect the debt to a collection

7

agency,[3] and that Ross Geland worked on behalf of Mori Lee. "When a collecting agency employs a lawyer to handle the claim of a patron, the patron become's the lawyer's client." *Chamberlin Co. of America v. Mays*, 96 Ga. App. 755, 758 (1) (101 SE2d 728) (1957).

Although an attorney-client relationship existed in this case, this does not end the inquiry, because an attorney's authority is limited to the particular purpose for which he was retained. See *Addley v. Beizer*, 205 Ga. App. 714, 719 (1) (423 SE2d 398) (1992). There is no doubt that Ross Geland's particular purpose was to collect on Just Scott's debt. A factual question remains, however, regarding whether Ross Geland was authorized to do other things. Notably, Mori Lee averred that it would not have allowed Ross Geland, or AMS, to waive its company policy and enter into a distributorship agreement. Nevertheless, Mori Lee admitted that there was no written contract, and there were no apparent limitations on the authority given to AMS regarding the collection of the debt. See *Anaya*, supra, 279 Ga. App. at 580 (in the absence of express restrictions of authority that is communicated to opposing parties,

---

[3] "A party may assign to another a contractual right to collect payment, including the right to sue to enforce the right. But an assignment must be in writing in order for the contractual right to be enforceable by the assignee." (Citation and punctuation omitted.) *Arrow Financial Svcs., LLC v. Wright*, 311 Ga. App. 319, 322 (1) (715 SE2d 725) (2011).

8

an attorney's authority is considered plenary). Moreover, Just Scott had a duty to inquire into the limits of Ross Geland's authority. See OCGA § 10-6-50; *Addley*, supra, 205 Ga. App. at 719 (1). No evidence showed that Just Scott made such an inquiry. Consequently, "[i]t is a question to be decided under the facts of [this] case whether [Just Scott] is barred from obtaining relief because of [its] negligence in not ascertaining [whether Ross Geland] had actual authority to enter the agreement." (Citation and punctuation omitted.) *Addley*, supra, 205 Ga. App. at 720 (1); see also *20/20 Vision Center*, supra, 256 Ga. at 134 (5), n.4; cf. *Gosule*, supra, 227 Ga. App. at 864 (1) ("Any apparent authority that might otherwise exist vanishes in the presence of the person's actual or constructive knowledge of what the agent is or is not empowered to do.") (citation and punctuation omitted). In sum, questions remain regarding whether Ross Geland had the authority to enter into a binding agreement on Mori Lee's behalf, and whether Just Scott's failure to inquire into that authority precluded relief.

2. Mori Lee also contends that, even if Ross Geland had the authority to enter into the distributorship agreement on its behalf, the agreement was not binding because it lacked essential terms. We disagree.

For a settlement agreement to be enforceable,

9

the parties must agree on all material terms, and those terms cannot be incomplete, vague, uncertain or indefinite. In considering whether a contract is unenforceable, however, a trial court must bear in mind that the law leans against the destruction of contracts on the ground of uncertainty, and the uncertainty and indefiniteness at issue must be "extreme" to warrant the conclusion that a contract cannot be enforced. . . . It is unnecessary that a contract state definitively and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves. This is particularly true with respect to settlement agreements, which are highly favored under the law and will be upheld whenever possible as a means of resolving uncertainties and preventing lawsuits.

(Punctuation and footnotes omitted.) *Triple Eagle Assoc., Inc. v. PBK, Inc.*, 307 Ga. App. 17, 19-20 (2) (704 SE2d 189) (2010).

While Mori Lee argues that the settlement agreement was uncertain, it points to no ambiguity or essential element that is missing. The settlement agreement clearly provided that in exchange for Just Scott's full payment of its debt, it would resume its business relationship with Mori Lee, with the exception that Mori Lee would no longer impose its requirement that Just Scott purchase wedding dresses. The agreement also provided that this arrangement would continue for as long as both parties conducted business, and this indefinite duration did not render the agreement void. See *Alexis, Inc. v. Werbell*, 209 Ga. 665, 670-671 (1) (f) (75 SE2d 168) (1953)

10

(contract providing that it would be binding so long as corporation existed was enforceable); cf. *Triple Eagle Assoc.*, supra, 307 Ga. App. at 22 (2) (a) (use of phrase "suitable period of time" did not render settlement agreement unenforceable). We see no ambiguity in the agreement and there was a meeting of the minds as to the future course of business between the parties, assuming that the evidence shows that Ross Geland had the authority to enter into the settlement agreement.

3. Just Scott argues that even if Ross Geland did not have the authority to enter into a settlement agreement, it was nevertheless entitled to summary judgment because Mori Lee ratified Ross Geland's actions. We disagree.

> It has long been the law in Georgia that a ratification by the principal relates back to the act ratified, and takes effect as if originally authorized. A ratification may be express, or implied from the acts or silence of the principal. Where a principal is informed by his agent of what he has done, the principal must express his dissatisfaction within a reasonable time, otherwise his assent to his agent's acts will be presumed. Unless the principal repudiates the act promptly or within a reasonable time, a ratification will be presumed. But in order for a ratification to be binding, the principal must have had full knowledge of all material facts.

(Footnotes omitted.) *Merritt v. Marlin Outdoor Advertising, Ltd.*, 298 Ga. App. 87, 91 (2) (679 SE2d 97) (2009). The question of what is an unreasonable period of time is one for the jury. *Klingbeil v. Renbaum*, 146 Ga. App. 591, 593 (3) (246 SE 2d 698) (1978).

11

Here, Just Scott's offer was memorialized on October 19, 2011, when it sent a settlement check and a letter to Ross Geland confirming the details of the purported settlement agreement. The check was cashed shortly thereafter. While Mori Lee learned on November 4, 2011 that Just Scott's account had been paid in full and received funds less than two weeks later, Mori Lee averred that it did not learn of the full terms of Just Scott's settlement offer until sometime in December 2011. The record is silent as to Mori Lee's subsequent course of action.[4] The record reveals only that Just Scott filed the instant lawsuit in April 2012 alleging that Mori Lee breached the purported settlement agreement. In June 2012, Mori Lee answered the complaint and paid money into the trial court's registry for the purpose of rescinding any purported agreement.

Just Scott argues that Mori Lee ratified the purported agreement because it did not attempt to rescind the agreement until more than six months after it learned of its existence. Whether Mori Lee acted within a reasonable time to repudiate Ross Geland's actions is a matter for the jury to determine. See *Klingbeil*, supra, 146 Ga.

---

[4] Although Just Scott alleges that Mori Lee accepted its subsequent order and promised to deliver the requested dresses by February 28, 2012, Just Scott points to no evidence supporting this allegation.

12

App. at 593 (3). We cannot conclude that, as a matter of law, Mori Lee ratified the purported settlement agreement.

Since there are factual questions as to whether Mori Lee authorized Ross Geland to accept Just Scott's distributorship offer or whether Mori Lee subsequently ratified Ross Geland's acceptance, neither party has established that they were entitled to summary judgment. Accordingly, we affirm the denial of Mori Lee's partial motion for summary judgment and reverse the grant of partial summary judgment to Just Scott.

*Judgment affirmed in part and reversed in part. Barnes, P. J., concurs. Ray, J., concurs in the judgment only*.