**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 18, 2015**

# In the Court of Appeals of Georgia

A15A1127. ZHONG v. PNC BANK, N.A. et al.

McFADDEN, Judge.

Fei Zhong appeals the grant of summary judgment to PNC Bank, N.A. and Wells Fargo Bank, N.A. in this action arising from the foreclosure of a property. Zhong argues that the trial court erred by granting summary judgment to PNC on the basis of an argument it never raised; that the trial court erred by allowing Wells Fargo to contest liability, even though it was in default; that the trial court erred by entering a final judgment in the defendants' favor without addressing her claims for breach of contract and negligence; and that the trial court erred by granting summary judgment on the ground that Zhong could seek as damages only the equity in her property, but she had no equity. We agree with Zhong that the trial court erred by granting the defendants summary judgment on the ground that Zhong had no equity in the

property. We therefore reverse the grant of the defendants' motions for summary judgment and remand for further proceedings. Accordingly, we do not reach Zhong's other claims of error.

1. *Facts*.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a grant of summary judgment de novo and the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Bassett v. Jasper Banking Co.*, 278 Ga. App. 698, 699 (629 SE2d 434) (2006) (citations omitted). Viewed in this light, the evidence showed that Zhong purchased the property, a house, in 2004 for $600,000. She first lived in the house and then leased it to tenants. In 2005, PNC bought the loan Zhong used to purchase the property.

For more than six years, Zhong paid her mortgage without incident. On March 31, 2010, PNC paid Zhong's delinquent 2009 property taxes, more than $11,000. Months later, PNC informed Zhong that she had an escrow shortage of $23,310.98 that had to be paid over 12 months. It established an escrow account and informed her that her monthly payment would be increased to $5,527.06. Zhong's payment had been $2,731.11. Zhong immediately called PNC to ask for an explanation and was

2

told that PNC would investigate the matter but she should keep making the current payment.

In November 2010, Zhong paid $2,731.11, which PNC applied to principal and interest, but asked Zhong to pay the difference of $2,795.97. In December 2010 and January 2011, Zhong paid $2,838.92, which PNC applied to the negative escrow balance. PNC wrote Zhong, notifying her of the insufficiency of the payments, in letters mailed to the property address. Zhong again contacted PNC, not having received an explanation from the investigation that PNC earlier had promised, to ask how PNC determined the amount owed and for an explanation of the escrow account.

Eventually PNC told Zhong that the increase reflected an increase in her escrow payment but it did not explain why the increase was necessary. In January 2011, PNC and Zhong agreed that Zhong would make payments of $3,891.98 for the next five years, retroactive to December 2010, and PNC sent Zhong a coupon book reflecting payments due in that amount, with the first coupon due February 2011.

The day after reaching that agreement, on January 28, 2011, Zhong made a payment of $3,891.98. PNC returned the check, with a letter stating that the payment did not "meet current acceptance guidelines." Zhong mailed payments of $3,891.98 in February and March 2011 through an overnight delivery service and using her

3

online banking account, but PNC returned the payments. Zhong again contacted PNC for an explanation, but received none. She hired counsel and instructed PNC to direct all communication to him.

In the meantime, on January 20, 2011, PNC sent a letter to Zhong at the property address that she was in breach and that if she failed to pay a $16,990.96 deficiency by February 19, 2011, it would accelerate the loan. In March 2011, PNC wrote Zhong that she owed $560,000, that Wells Fargo was the creditor, and that PNC was the servicer. Zhong called the number listed on the letter, but received no explanation. Her attorney contacted PNC, and eventually PNC said that it would forebear foreclosure. Per PNC's request, Zhong repeatedly submitted a hardship application and related documents.

In 2012, Wells Fargo foreclosed on the property. Neither Zhong nor her counsel received notice of the foreclosure sale, which was sent to the vacant property address even though Zhong had instructed PNC to direct all communications to counsel. As a result, Zhong lost the property, her credit was damaged, and she was "devastat[ed] and embarrass[ed]."

Zhong filed this action against PNC and Wells Fargo, claiming breach of contract, wrongful foreclosure, and negligence, and seeking damages, punitive

4

damages, and attorney fees. Wells Fargo did not timely answer the complaint, and the trial court entered default against it.

Wells Fargo and PNC filed separate motions for summary judgment. The trial court conducted a hearing, received supplemental briefing, and granted the defendants summary judgment. The court ruled that, in the face of the evidence of Zhong's lack of equity, her failure to point to specific evidence that she had equity in the property entitled the defendants to summary judgment. Although the order did not specifically address the negligence or breach of contract claims, the trial court directed the clerk to close the case. Zhong filed this appeal.

2. *The trial court granted summary judgment on an erroneous legal theory*.

The trial court erred by adopting the argument that Zhong's damages were limited to equity in the property and that because she had no equity, the defendants were entitled to summary judgment. Because we hold the lack-of-equity argument to be without merit, we do not reach Zhong's argument that PNC's motion for summary judgment did not properly raise it.

A plaintiff in a wrongful foreclosure action may seek damages that are not directly related to the value of the property, including damages for mental anguish and for injury to credit standing. See *Curl v. First Federal Savings & Loan Assn.*, 243

Ga. 842, 843 (2) (257 SE2d 264) (1979); *DeGolyer v. Green Tree Servicing*, 291 Ga. App. 444, 449 (4) (662 SE2d 141) (2008). Further, sufficiently culpable conduct may present a jury issue as to punitive damages. See *First Union Natl. Bank v. Cook*, 223 Ga. App. 374, 379 (8) (477 SE2d 649) (1996) (defendant pursued foreclosure, although security deed had been marked paid, in accordance with policy of foreclose first and ask questions later). Accordingly, Zhong was not limited to recovering only her lost equity in the property and the trial court erred in holding otherwise.

The trial court relied on *Calhoun First Natl. Bank v. Dickens*, 264 Ga. 285 (443 SE2d 837) (1994), as support for the holding that Zhong only could recover the lost equity she possessed at the time of the foreclosure. But *Calhoun First Natl. Bank* does not support that holding. There, our Supreme Court held that a plaintiff in a wrongful foreclosure action "may not *both* set aside or cancel the foreclosure *and also* recover damages for the value of the property[.]" Id. at 286 (1) (citation and punctuation omitted; emphasis in original). In other words, the court held that the plaintiff must elect her remedy. Nothing in the opinion limited wrongful foreclosure damages to loss of equity. Indeed, in a footnote, the court indicated that a plaintiff may recover "damages not associated with the value of the property." Id. at 286 (1) n. 1 (citation

6

omitted). Thus, the trial court erred by granting summary judgment to the defendants on all of Zhong's claims solely because she lacked equity in the property.

Wells Fargo argues that the trial court's error does not require reversal because Zhong presented no evidence of any other damages. However, a plaintiff has no burden on summary judgment

> to respond to issues which are not raised in the motion for summary judgment or to present its entire case on all allegations in the complaint -- even on issues not raised in the defendants' motion. Indeed, until appellees pierced the allegations of [Zhong's] complaint on a particular issue, [s]he was neither required to respond to the motion on that issue nor required to produce evidence in support of [her] complaint on that issue. The issues that must be rebutted on motion for summary judgment are those raised by the motion.

*Hodge v. Sada Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995) (citations and punctuation omitted). The only damages issues the defendants raised in their summary judgment motions were that Zhong had no damages because she lacked equity in the property and that she was not entitled to punitive damages or attorney fees. Consequently, those were the only damages issues that Zhong was required to address. Id.

As the trial court relied on an erroneous legal theory to grant summary judgment to the defendants and did not address all of the arguments they advanced in their motions, we reverse the grant of summary judgment and remand this case for further proceedings not inconsistent with this opinion. See *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

*Judgment reversed and case remanded. Ellington, P. J., and Dillard, J., concur*.