**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 13, 2018**

# In the Court of Appeals of Georgia

A17A1891. ZHONG v. PNC BANK, N. A. et al.

McFADDEN, Presiding Judge.

This is the second appearance before us of this case, which arises from Fei Zhong's action for breach of contract, negligence, and wrongful foreclosure against Wells Fargo Bank, N. A. and PNC Bank, N. A. In *Zhong v. PNC Bank, N. A.*, 334 Ga. App. 653 (780 SE2d 92) (2015) (*Zhong I*), we reversed the trial court's grant of summary judgment to Wells Fargo and PNC on the ground that the trial court based his ruling on an erroneous legal theory — that Zhong could seek as damages only her equity in the property at issue — and we remanded the case to the trial court for further proceedings. On remand, and after further evidence and a hearing, the trial court again granted summary judgment to Wells Fargo and PNC, and Zhong appeals.

As detailed below, Wells Fargo is not entitled to summary judgment because the well-pled allegations of Zhong's complaint — as to which Wells Fargo defaulted — have established its liability and there exist genuine issues of material fact on the amount of damages, which is the only question remaining for resolution. PNC, on the other hand, is entitled to summary judgment on Zhong's claims for breach of her security deed and negligence based on a breach of its duties under the Real Estate Settlement Procedures Act (RESPA), but it is not entitled to summary judgment on Zhong's claim for wrongful foreclosure. And although Zhong's oral agreement with PNC regarding her monthly payment is not enforceable, she has pointed to facts allowing her to pursue a claim for breach of that agreement under the theory of promissory estoppel.

We therefore affirm in part and reverse in part the trial court's judgment.

1. *Facts and procedural posture.*

"We review a grant of summary judgment de novo and the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Zhong I*, 334 Ga. App. at 653 (1) (citation omitted). So viewed, the evidence at the time of *Zhong I* showed:

2

Zhong purchased the property, a house, in 2004 for $600,000. She first lived in the house and then leased it to tenants. In 2005, PNC bought the loan Zhong used to purchase the property.

For more than six years, Zhong paid her mortgage without incident. On March 31, 2010, PNC paid Zhong's delinquent 2009 property taxes, more than $11,000. Months later, PNC informed Zhong that she had an escrow shortage of $23,310.98 that had to be paid over 12 months. It established an escrow account and informed her that her monthly payment would be increased to $5,527.06. Zhong's payment had been $2,731.11. Zhong immediately called PNC to ask for an explanation and was told that PNC would investigate the matter but she should keep making the current payment.

In November 2010, Zhong paid $2,731.11, which PNC applied to principal and interest, but asked Zhong to pay the difference of $2,795.97. In December 2010 and January 2011, Zhong paid $2,838.92, which PNC applied to the negative escrow balance. PNC wrote Zhong, notifying her of the insufficiency of the payments, in letters mailed to the property address. Zhong again contacted PNC, not having received an explanation from the investigation that PNC earlier had promised, to ask how PNC determined the amount owed and for an explanation of the escrow account.

Eventually PNC told Zhong that the increase reflected an increase in her escrow payment but it did not explain why the increase was necessary. In January 2011, PNC and Zhong agreed that Zhong would

make payments of $3,891.98 for the next five years, retroactive to December 2010, and PNC sent Zhong a coupon book reflecting payments due in that amount, with the first coupon due February 2011.

The day after reaching that agreement, on January 28, 2011, Zhong made a payment of $3,891.98. PNC returned the check, with a letter stating that the payment did not "meet current acceptance guidelines." Zhong mailed payments of $3,891.98 in February and March 2011 through an overnight delivery service and using her online banking account, but PNC returned the payments. Zhong again contacted PNC for an explanation, but received none. She hired counsel and instructed PNC to direct all communication to him.

In the meantime, on January 20, 2011, PNC sent a letter to Zhong at the property address that she was in breach and that if she failed to pay a $16,990.96 deficiency by February 19, 2011, it would accelerate the loan. In March 2011, PNC wrote Zhong that she owed $560,000, that Wells Fargo was the creditor, and that PNC was the servicer. Zhong called the number listed on the letter, but received no explanation. Her attorney contacted PNC, and eventually PNC said that it would forebear foreclosure. Per PNC's request, Zhong repeatedly submitted a hardship application and related documents.

In 2012, Wells Fargo foreclosed on the property. Neither Zhong nor her counsel received notice of the foreclosure sale, which was sent to the vacant property address even though Zhong had instructed PNC to direct all communications to counsel. As a result, Zhong lost the

property, her credit was damaged, and she was "devastat[ed] and embarrass[ed]."

*Zhong I*, 334 Ga. App. at 653-654 (1). We also described in our prior opinion the procedural posture of Zhong's first appeal:

> Zhong filed this action against PNC and Wells Fargo, claiming breach of contract, wrongful foreclosure, and negligence, and seeking damages, punitive damages, and attorney fees. Wells Fargo did not timely answer the complaint, and the trial court entered default against it.
>
> Wells Fargo and PNC filed separate motions for summary judgment. The trial court conducted a hearing, received supplemental briefing, and granted the defendants summary judgment. The court ruled that, in the face of the evidence of Zhong's lack of equity, her failure to point to specific evidence that she had equity in the property entitled the defendants to summary judgment. Although the order did not specifically address the negligence or breach of contract claims, the trial court directed the clerk to close the case.

*Zhong I*, 334 Ga. App. at 654-655 (1).

On appeal in *Zhong I*, we reversed the grant of summary judgment to Wells Fargo and PNC, holding that "[t]he trial court erred by adopting the argument that Zhong's damages were limited to equity in the property and that because she had no

equity, the defendants were entitled to summary judgment." *Zhong I*, 334 Ga. App. at 655 (2). Because the trial court did not address other arguments Wells Fargo and PNC had raised in their summary judgment motions, we remanded the case for further proceedings not inconsistent with our opinion. Id. at 656 (2).

On remand, the trial court reopened discovery, which explored the nature of Zhong's claimed damages, among other things. Zhong stated in response to interrogatories that she was damaged by the wrongful foreclosure in several respects, including: "losing her custom-built dream house . . . , the money she put into the house and its value, damage to her credit, . . . damage to her overal[l] well-being, and damage from having to go through the entire ordeal." As to her credit, she gave deposition testimony[1] that there is a "negative thing on [her] credit report" from the foreclosure and that the limits on several of her credit cards were severely curtailed, other credit cards were closed, and her current credit status prevents her from renting an apartment or obtaining a car loan. But she could not testify to a specific calculation

[1] We note that the appellate record contains only a few pages excerpted from Zhong's two-day deposition. The record indicates that the parties did not file the entire deposition with the trial court. While parties may file deposition excerpts in support of or opposition to summary judgment, see *Blake v. KES, Inc.*, 329 Ga. App. 742, 745 (1) (a) (766 SE2d 138) (2014), our review on appeal is limited to the evidence in the record. *Community Newspaper Holdings v. King*, 299 Ga. App. 267, 270 (1) n. 9 (682 SE2d 346) (2009).

6

of the damage she sustained from the damaged credit. Zhong also testified that the experience of losing her house in the foreclosure caused her physical and emotional pain and suffering.

2. *Summary judgment to Wells Fargo.*

(a) *Enumeration of errors.*

Zhong enumerates as error the trial court's grant of summary judgment to Wells Fargo. As an initial matter, we reject Wells Fargo's assertions that "[t]his enumeration failed to identify any specific error of law or fact" by the trial court and that Zhong "did not appeal" certain aspects of the trial court's summary judgment order. "An error of law has as its basis a specific ruling made by the trial court." *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999). The trial court's grant of summary judgment to Wells Fargo is a specific ruling made by the trial court, and Zhong's enumeration of that ruling as error is sufficient to place that ruling before us for review. Zhong is not required to enumerate as error the individual facets of her attack on that ruling. *Felix*, supra at 539-540.

(b) *Default.*

As detailed below, the trial court erred in granting summary judgment to Wells Fargo. Earlier in the proceeding, the trial court entered a default judgment against

7

Wells Fargo because Wells Fargo did not timely answer Zhong's complaint. Consequently, Wells Fargo has "admitted each and every well-pled material factual allegation of [Zhong's] complaint, except as to the amount of damages alleged." *Hooker v. Roberson*, 316 Ga. App. 345 (1) (729 SE2d 484) (2012) (citations omitted). Accord *Cohran v. Carlin*, 254 Ga. 580, 585 (3) (331 SE2d 523) (1985); *Hope Elec. Enterprises v. Proforce Staffing*, 268 Ga. App. 302, 303 (2) (601 SE2d 723) (2004).

Nevertheless,

[a]lthough a default operates as an admission of the well-pled factual allegations of the complaint, it does not admit allegations not well pled, forced inferences, or conclusions of law. Default does not preclude [a] defendant[ ] from showing that under the facts as deemed admitted, no claim exists which would allow the plaintiff to recover.

*Standridge v. Spillers*, 263 Ga. App. 401, 404 (2) (587 SE2d 862) (2003) (citation and punctuation omitted). Accord *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 498 (740 SE2d 413) (2013). Wells Fargo argues that under the facts as deemed admitted, Zhong cannot recover against it. We disagree.

Zhong alleged in her complaint that Wells Fargo foreclosed on her property even though she had informed the loan servicer, PNC, that "she was ready, willing, and able to comply with her loan obligations and tender payments as agreed" and had

8

made monthly payments in an amount to which PNC had agreed. She alleged that Wells Fargo foreclosed without giving her notice in compliance with OCGA § 44-14-162.2, and that Wells Fargo foreclosed without having a recorded interest in the property. She alleged that she suffered damages as a result of the foreclosure and of Wells Fargo's breach of its statutory duties. "The facts as alleged in the complaint, together with the fair inferences and conclusions of fact to be drawn from those allegations, support [Zhong's] claim[s and] provide ample evidence to support the conclusion of law reached in [Zhong's] complaint — that is, that [Wells Fargo's] conduct was the proximate cause of [Zhong's] injuries." *Freese II v. Mitchell*, 318 Ga. App. 662, 665 (2) (734 SE2d 491) (2012) (citation and punctuation omitted). See *Roylston v. Bank of America, N. A.*, 290 Ga. App. 556, 559 (1) (b) (660 SE2d 412) (2008) (physical precedent only) ("Where a foreclosing creditor fails to comply with the statutory duty to provide notice of sale to the debtor in accordance with OCGA § 44-14-162 et seq., the debtor . . . may sue for damages for the tort of wrongful foreclosure.") (citation omitted). See also *Babalola v. HSBC Bank, USA, N. A.*, 324 Ga. App. 750, 752-753 (2) (a) (751 SE2d 545) (2013) (allegations of complaint that lender and loan servicer failed to provide borrower with notice required by OCGA § 44-154-162.2 sufficiently stated claim of wrongful foreclosure to avoid dismissal);

9

*Azarat Mktg. Group v. Dept. of Administrative Affairs*, 245 Ga. App. 256, 258 (1) (b) (537 SE2d 99) (2000) (in considering sufficiency of allegations in complaint to which defendant has defaulted, we resolve all doubts in favor of plaintiff, as we would on motion to dismiss for failure to state claim); *Southwest Community Hosp. & Med. Center v. Thompson*, 165 Ga. App. 442, 443 (3) (301 SE2d 501) (1983) ("The element of proximate cause . . . having been alleged in plaintiff's complaint is admitted due to the default of defendant and requires no further proof."); *Flanders v. Hill Aircraft & Leasing Corp.*, 137 Ga. App. 286, 289 (223 SE2d 482) (1976) (by defaulting, defendant admitted proximate causation of alleged injuries).

(c) *Damages.*

Wells Fargo argues that the well-pled allegations in the complaint do not show that Zhong was damaged. But Zhong alleged in her complaint that she sustained damage in several respects, including "damage to her credit and reputation for creditworthiness." Wells Fargo argues that, as a matter of law, Zhong cannot seek to recover this type of damage in a wrongful foreclosure claim under state law. In *Zhong I*, however, we held this type of damage to be legally compensable in this case. *Zhong*

10

*I*, 334 Ga. App. at 655 (2). Our ruling that Zhong can seek to recover for damage to her credit standing is law of this case and therefore binding in this proceeding. See OCGA § 9-11-60 (h).[2]

Moreover, contrary to Wells Fargo's argument, Zhong's allegation that she sustained damage, including damage to her credit standing, is an allegation of fact, not a legal conclusion. See *Aldworth Co. v. England*, 286 Ga. App. 1, 2 (1) (648 SE2d 198) (2007) (whether plaintiff suffered harm as result of defendant's tortious act or omission is a fact question that can be deemed admitted through default). So by virtue of the default, Wells Fargo has admitted Zhong's allegation that she sustained damage, including damage to her credit standing, and at this stage in the proceeding Wells Fargo cannot contest the factual basis of that allegation. See *Cohran*, 254 Ga. at 585 (3). "The default concludes [Wells Fargo's] liability, and estops [it] from offering any defenses which would defeat [Zhong's] right of recovery." Id. (citations omitted). Zhong is not required, to avoid summary judgment, to produce any evidence

---

[2] Wells Fargo asserts that we also implied in *Zhong I* that Zhong may not have any damages, and it argues that we should treat this implication as the law of the case. While we disagree with this interpretation of our earlier decision, even if the decision contained that implication it is not the law of the case. The law of the case rule, OCGA § 9-11-60 (h), does not encompass implied rulings. See *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 186 n. 5 (674 SE2d 894) (2009).

11

of the fact that she was damaged with respect to her credit standing (or in any other way), because she alleged in her complaint that she was damaged and Georgia law entitles her to judgment as if her allegations "were supported by proper evidence." OCGA § 9-11-55 (a). See *Southwest Community Hosp. & Med. Center*, 165 Ga. App. at 443 (3) (where elements of claim are admitted by virtue of defendant's default, plaintiff is not required to prove them).

What remains for resolution is the *amount* of damages Zhong sustained. This is a distinct question from *whether* Zhong sustained damages. Wells Fargo argues that Zhong has not presented evidence from which a jury could determine the amount of her damages. See OCGA § 9-11-55 (a) (when a case in default involves unliquidated damages, "the plaintiff shall be required to introduce evidence and establish the amount of damages"). A plaintiff seeking compensatory damages is "not required to present evidence of a specific dollar amount of damages to avoid summary judgment, but [she is] required to present evidence sufficient to serve as the basis for a factfinder to calculate the amount of damages due [her after] liability [is] established." *Pollman v. Swan*, 289 Ga. 767, 768 (2) (716 SE2d 191) (2011). But we need not reach the issue of whether Zhong presented evidence that would support an award of compensatory damages because the record, viewed in the light most favorable to

Zhong, supports the possibility that she could recover nominal damages and punitive damages even if a jury is unable to determine the amount of her compensatory damages.

Nominal damages are available to a successful plaintiff in a wrongful foreclosure case. See *Hodson v. Whitworth*, 173 Ga. App. 863, 864 (1) (328 SE2d 753) (1985) (finding, in wrongful foreclosure case, that "a verdict for nominal damages was authorized but not demanded"). See generally OCGA § 51-12-4 ("Damages are given as compensation for injury; generally, such compensation is the measure of damages where an injury is of a character capable of being estimated in money. If an injury is small or the mitigating circumstances are strong, nominal damages only are given."); *Williams v. Harris*, 207 Ga. 576, 579 (2) (63 SE2d 386) (1951) ("The law infers some damage from the invasion of a property right; and if no evidence is given of any particular amount of loss, it declares the right by awarding what it terms 'nominal damages.'") (citations omitted). Wells Fargo argues that Zhong is not entitled to nominal damages because the allegations in her complaint did not establish that she was injured or that her injuries were proximately caused by Wells Fargo's tortious act. See *Whiteside v. Decker, Hallman, Barber & Briggs, P. C.*, 310 Ga. App. 16, 20 (2) (712 SE2d 87) (2011) ("In the absence of specific proof

of the amount of damages flowing from a tortious act, general or nominal damages may be inferred, but the defendant's liability for the damages must be established, including proof that the tortious act was the proximate cause of some actual loss.") (citation omitted). But as discussed above, the complaint allegations, deemed admitted by virtue of Wells Fargo's default, are sufficient on the issue of Wells Fargo's liability for damages. While Wells Fargo may "dispute the *amount* of damages even to the point of showing their nonexistence, [it may] not . . . deny the admitted injuries or its liability therefor." *Flanders*, 137 Ga. App. at 289 (citation omitted; emphasis supplied).

Wells Fargo also argues that Zhong is not entitled to nominal damages because she did not specifically plead them in her complaint. In support of this argument, it cites a decision of our Supreme Court, *Haber, Blum, Bloch Hat Co. v. Southern Bell Tel. & Tel.*, 118 Ga. 874 (45 SE 696) (1903), that predates the 1966 enactment of our Civil Practice Act. "Under the Civil Practice Act it is not necessary to pray specifically for general or nominal damages in order to present a question for the jury as to nominal damages. All that is now necessary is that the plaintiff raise the issue during the trial so that it may be presented to the jury." *Bishop v. Intl. Paper Co.*, 174 Ga. App. 863, 864 (1) (332 SE2d 12) (1985) (citation, punctuation, and emphasis

14

omitted). In discovery following remand, Zhong asserted that she seeks nominal damages, among other types of damage.

Punitive damages are also potentially available to Zhong. We held in *Zhong I* that "sufficiently culpable conduct may present a jury issue as to punitive damages" in this case. *Zhong*, supra, 334 Ga. App. at 655 (2) (citations omitted). Moreover, "punitive damages may be awarded even when actual damages are small," *Tyler v. Lincoln*, 272 Ga. 118, 121 (1) (527 SE2d 180) (2000) (citation omitted), and they may be awarded in a case where the plaintiff receives nominal but not actual damages. See *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. 613, 614-615 (1) (409 SE2d 501) (1991). "Whether the circumstances were sufficiently aggravating to authorize punitive damages is a jury question." *Dow Chemical Co. v. Ogletree*, 237 Ga. App. 27, 32 (3) (514 SE2d 836) (1999) (citation omitted).

"Liability having been established [through the default], the possible recovery by [Zhong] of at least nominal [and punitive] damages was sufficient to preclude the grant of summary judgment in favor of [Wells Fargo]." *Bishop*, 174 Ga. App. at 864 (1) (citation omitted). We therefore reverse the grant of summary judgment to Wells Fargo.

3. *Summary judgment to PNC.*

15

Zhong brought claims for breach of contract, negligence, and wrongful foreclosure against PNC. The trial court granted summary judgment to PNC on all of Zhong's claims. As detailed below, we find that PNC is entitled to summary judgment on the claim that it breached the security deed but we find that Zhong may pursue a claim for promissory estoppel. We further find that PNC is entitled to summary judgment on the claim for negligence based on a RESPA violation but not on the claim for wrongful foreclosure.

(a) *Breach of contract — security deed.*

Zhong argues that a genuine issue of material fact exists as to whether PNC breached the terms of her security deed in the way that PNC treated Zhong's outstanding tax obligation. We disagree.

It is undisputed that PNC paid Zhong's delinquent property taxes and then recalculated Zhong's monthly escrow payment to include a repayment of that amount. The security deed permitted PNC to pay Zhong's delinquent property taxes, which were "Escrow Items" under the deed, and to demand repayment. Section 3 of the security deed provided: "If . . . Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such

16

amount." Section 9 of the security deed permitted PNC to "do and pay for whatever is reasonable or appropriate to protect [its] interest in the Property and rights under this Security Instrument," and it provided that: "Any amount disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment."

Zhong does not appear to challenge that PNC could demand repayment under the security deed; instead, she argues that, because the security deed required repayment to become additional secured debt, PNC was not authorized to incorporate that amount into her monthly escrow payments. We discern no such prohibition in the security deed. The deed's plain language permitted PNC to demand repayment of the amount it paid for Zhong's taxes, with interest, at any time, so long as it gave notice to Zhong of its request. Nothing in the deed precluded PNC from allowing Zhong to make this payment over time, incorporated into her monthly payments, rather than as a single payment.

Zhong argues that the notice she received from PNC regarding repayment of the delinquent taxes was confusing and unhelpful. But she does not argue that this

notice itself constituted a breach of the security deed. Moreover, PNC has pointed to evidence that it informed Zhong by letter that it would be paying her delinquent taxes, that it estimated the amount of those taxes, with service fee, to be $10,300.37, and that the estimated amount would "be reflected in your next escrow analysis." There is evidence that PNC's subsequent written demands for escrow payments included a line item for "Prorated Escrow Shortage." A written escrow disclosure statement that PNC sent Zhong in late January 2011 expressly states that her monthly payment is calculated to address an escrow shortage. Zhong has neither argued nor pointed to evidence to show that these communications failed to constitute the "notice . . . requesting payment" contemplated in § 9 of the security deed. See generally *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (when, in support of summary judgment motion, defendant presents evidence negating an essential element of plaintiff's claim, plaintiff must point to specific evidence giving rise to triable issue).

(b) *Breach of contract — agreement regarding monthly payment.*

Zhong argues that a genuine issue of material fact exists as to whether PNC breached its agreement to accept monthly payments in the amount of $3,891.98. As detailed below, although the agreement is unenforceable on account of the statute of

18

frauds, summary judgment is not appropriate because Zhong may proceed under the doctrine of promissory estoppel. See generally *20/20 Vision Center v. Hudgens*, 256 Ga. 129, 135 (7) n. 6 (345 SE2d 330) (1986) (reversing dismissal of complaint because its allegations could support relief under theory of promissory estoppel, although complaint did not raise that argument); *U. S. Foodservice v. Bartow County Bank*, 300 Ga. App. 519, 522 (2) (685 SE2d 777) (2009) (applying *20/20 Vision Center*, supra, in resolving appeal from denial of summary judgment, where complaint did not expressly set forth promissory estoppel argument but did allege facts that, if proved, could entitle plaintiff to relief under that doctrine).

(i) *Statute of frauds.*

Our analysis of Zhong's claim that PNC breached an agreement about her monthly payment requires a more detailed discussion of the relevant evidence. Viewed in the light most favorable to Zhong, the evidence[3] shows that after PNC informed Zhong that it was increasing her monthly mortgage payment from $2,795.95 to $5,527.06, she called PNC and was told to "keep paying [her] current mortgage payment in the amount of $2,795.95 until PNC could investigate the issue." In

---

[3] The evidence on summary judgment includes the facts alleged in Zhong's verified complaint that are within her personal knowledge. See *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988).

19

December 2010, PNC notified Zhong that she had a shortage in her escrow account. Zhong was unable to obtain from PNC an explanation of the shortage. Ultimately, PNC informed Zhong that it needed to increase her escrow payment but gave her no substantive reason for the increase. On January 20, 2011, PNC sent Zhong a demand letter informing her of the amount she needed to pay to make her loan current. Several days later, on January 27, 2011, Zhong spoke with a representative of PNC about the situation. Zhong disputed the higher monthly payment as unreasonable and incorrect, and the PNC representative "agreed that PNC's actions seemed problematic and unreasonable." Zhong stated that, although she "disputed PNC's actions," she wanted to "resolve the issue[.]" Zhong and the PNC representative "agreed that [Zhong] would make all future payments in the amount of $3,891.98" and that "this is *all [she] needed to do*, and the situation would be considered resolved." (Emphasis supplied.)

Zhong immediately made a payment of $3,891.98 to PNC, and shortly afterward she received an escrow disclosure statement and a coupon booklet from PNC reflecting that her monthly payments were to be $3,891.98. Zhong subsequently made several other $3,891.98 payments. But notwithstanding the January 27 agreement, PNC refused to cash any of these payments on the ground that they did

not "meet current acceptance guidelines." PNC's letters rejecting the payments did not explain what action Zhong could take to make her loan current.

After Zhong was unable to obtain an explanation from PNC about why it was refusing to accept the agreed-to payments, she hired an attorney. In March 2011, Zhong received a demand letter for $560,000, which she forwarded to her attorney. Zhong's attorney informed PNC in writing that PNC was to address all future correspondence about the loan to him. PNC was not able to adequately explain the situation with Zhong's loan to the attorney. However, PNC informed him that Zhong should submit certain documents, which would "require PNC to perform an internal audit of the situation, halt the foreclosure procedure, and put [the attorney] in contact with someone with power to rectify the situation." Zhong submitted the requested forms multiple times.

On January 20, 2012, PNC sent a notice of foreclosure to the address of Zhong's property. Zhong was not living at the property and did not receive the notice. PNC did not send the notice of foreclosure to Zhong's attorney.

Zhong argues that PNC breached its January 27, 2011 agreement to accept monthly payments in $3,891.98 on her loan. We agree with PNC, however, that the January 27 agreement was not an enforceable contract. Assuming without deciding

21

that Zhong's agreement to pay $3,891.98 in resolution of her dispute with PNC was sufficient consideration, but see *Citizens Trust Bank v. White*, 274 Ga. App. 508, 511 (1) (618 SE2d 9) (2005) ("An agreement on the part of one to do what he is already legally bound to do is not a sufficient consideration for the promise of another.") (citations and punctuation omitted), the agreement does not satisfy the statute of frauds.

The statute of frauds requires contracts for an interest in or concerning lands to "be in writing and signed by the party to be charged therewith or some person lawfully authorized by him." OCGA § 13-5-30 (4). We do not address whether the January 27 agreement falls within the purview of this provision because Zhong appears to concede that point; in her opposition to summary judgment before the trial court and in her appellate briefs before this court she has offered no argument to the contrary. Instead, she offers two arguments for why the statute of frauds does not render her agreement with PNC unenforceable. Neither argument has merit.

First, Zhong argues that the escrow analysis and coupon book, sent to her by PNC, satisfied the requirement that the agreement be in writing. These documents showed the agreed-to monthly payment of $3,891.98 and provided payment instructions and other information related to the monthly payment. But the case

22

Zhong cites for the proposition that we should treat these documents as being "signed" by PNC — *Kohlmeyer & Co. v. Bowen*, 126 Ga. App. 700 (192 SE2d 400) (1972) — is inapposite. That case concerns what constitutes a writing within the context of Georgia's Commercial Code, which does not apply here. See *You v. JP Morgan Chase Bank, N. A.*, 293 Ga. 67, 73 (1) (743 SE2d 428) (2013). Even if the coupon book could satisfy the signature requirement, it does not contain the term crucial to Zhong's claim, that the $3,891.98 monthly payment was "all [Zhong] needed to do" to "resolve" the dispute concerning her debt.

Alternatively, Zhong argues that the January 27 agreement falls within one of the exceptions to the statute of frauds provided in OCGA § 13-5-31. Pertinently, that Code section states that the writing requirement of the statute of frauds does not extend to cases "[w]here there has been performance on one side, accepted by the other in accordance with the contract[,]" OCGA § 13-5-31 (2), or to cases "[w]here there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance." OCGA § 13-5-31 (3). Neither statutory exception applies here. As to OCGA § 13-5-31 (2), even if Zhong's tender of a $3,891.98 payment constituted full performance on her side of the agreement, it is undisputed that PNC did not accept that performance. (Zhong, of

course, does not argue that *PNC* fully performed its side of the agreement.) As to OCGA § 13-5-31 (3), the part performance must be sufficient as a matter of law to establish the essential element sought to be proved. *Tampa Investment Group v. Branch Banking & Trust Co.*, 290 Ga. 724, 729-730 (2) (723 SE2d 674) (2012). The element Zhong seeks to prove is PNC's promise that if Zhong made the $3,891.98 monthly payments PNC would not require anything else of her to resolve the dispute and bring her loan current. Neither PNC's act of sending payment coupons reflecting the $3,891.98 amount nor Zhong's act of making payments in that amount establishes that PNC promised not to require anything else of Zhong. For these reasons, under the statute of frauds the January 27 agreement is not enforceable as a contract.

(ii) *Promissory estoppel.*

Nevertheless, Zhong may proceed against PNC under the doctrine of promissory estoppel, which is not barred by the statute of frauds. See *Sun-Pacific Enterprises v. Girardot*, 251 Ga. App. 101, 105 (2) (553 SE2d 638) (2001). "[A]lthough [Zhong] did not expressly set forth a promissory estoppel argument in [her] complaint . . . the complaint did allege facts that, if proved, could entitle [her] to relief under this doctrine[.]" *U. S. Foodservice*, supra 300 Ga. App. at 522 (2) (citation omitted). Moreover, Zhong expressly argued the issue of promissory

24

estoppel in her opposition to summary judgment. See id. (because defendant "did argue elements of promissory estoppel" in its summary judgment opposition brief, we could consider on appeal the merits of the promissory estoppel argument).

Under the doctrine of promissory estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." OCGA § 13-3-44 (a). To recover for promissory estoppel, a plaintiff must show:

> (1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiff to rely on such promise; (3) the plaintiff relied on such promise to [her] detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiff changed [her] position to [her] detriment by surrendering, forgoing, or rendering a valuable right.

*Hendon Properties, LLC v. Cinema Dev., LLC*, 275 Ga. App. 434, 438-439 (2) (620 SE2d 644) (2005) (citation and punctuation omitted). "Promissory estoppel claims are extremely fact specific and are not susceptible to application of general rules." *DPLM, Ltd. v. J. H. Harvey Co.*, 241 Ga. App. 219, 220 (1) (526 SE2d 409) (1999) (citation and punctuation omitted).

The evidence gives rise to genuine issues of material fact that permit Zhong to proceed on a promissory estoppel claim. Viewed in Zhong's favor, there is evidence from which a jury could find that: PNC promised her that if she made monthly payments of $3,891.98 going forward she would not be in default on her loan obligations; PNC reasonably should have expected Zhong to believe that it would adhere to its promise regarding the payments on her account; Zhong relied on that promise by making payments in that amount rather than paying the higher amounts demanded in correspondence from PNC that *predated* the January 27 agreement; as a result of her reliance on the promise that the $3,891.98 payments were all she needed to do, Zhong did not take other steps that could have saved her house from being lost to foreclosure; and injustice could only be avoided by enforcing the promise. Consequently, PNC is not entitled to summary judgment on this claim.

(c) *Negligence.*

Zhong argues that the trial court erred in granting summary judgment to PNC on her claim for negligence because there is evidence showing that PNC failed to communicate information to her as required by the Real Estate Settlement Procedures Act (RESPA), 12 USC § 2601 et seq. We do not agree.

Zhong argues that PNC breached a duty set forth in RESPA to respond to her inquiries about her loan, pointing to evidence that PNC did not meet specific five- and thirty-day deadlines imposed by the current version of that statute. See 12 USC § 2605 (e) (1) (A) & (2). She further argues that Georgia law entitled her to pursue the alleged RESPA breach as a private cause of action. See OCGA § 51-8-1. But as PNC points out, the version of RESPA in effect during the period when Zhong alleges the violations occurred (spring of 2011) provided PNC with longer time frames in which to respond. See 12 USC § 2605 (e) (2011) (providing for 20- and 60-day deadlines). Zhong has pointed to no evidence that PNC failed to comply with these longer time frames. So we affirm the grant of summary judgment to PNC on Zhong's negligence claim based on the alleged RESPA violation.

(d) *Wrongful foreclosure.*

Zhong argues that the trial court erred in granting summary judgment to PNC on her claim for wrongful foreclosure because there is evidence showing that PNC failed to provide notice of the foreclosure to her in compliance with OCGA § 44-14-162.2.[4] We agree.

---

[4] To the extent that Zhong has alleged a separate claim of negligence based on this failure to provide the statutorily-required notice, we treat that claim as part of her wrongful foreclosure claim.

"In Georgia, a plaintiff asserting a claim for wrongful foreclosure must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." *Thompson-El v. Bank of America, N. A.*, 327 Ga. App. 309, 310 (2) (759 SE2d 49) (2014) (citation and punctuation omitted). As the assignee of Zhong's security deed, PNC owed Zhong the duty to comply with Georgia's foreclosure statute, including its provisions regarding notice. See *Calhoun First Nat. Bank v. Dickens*, 264 Ga. 285, 286 (2) (443 SE2d 837) (1994); *Thompson-El*, supra at 310-311 (2).

Georgia's foreclosure statute provides that "[n]o sale of real estate under powers contained in mortgages, deeds, or other lien contracts shall be valid . . . unless notice of the sale shall have been given as required by Code Section 44-14-162.2." OCGA § 44-14-162 (a). That Code section pertinently requires:

> Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice . . . shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address *or to such other address as the debtor may designate by written notice to the secured creditor*.

28

OCGA § 44-14-162.2 (a) (emphasis supplied). "The plain language of OCGA § 44-14-162.2 (a) requires the secured creditor send notice to the property address *unless* the debtor designates in writing another address." *Farris v. First Financial Bank*, 313 Ga. App. 460, 464 (2) (722 SE2d 89) (2011) (citations and punctuation omitted; emphasis supplied). See *Mbigi v. Wells Fargo Home Mtg.*, 336 Ga. App. 316, 318 (1) (a) (785 SE2d 8) (2016) (allegation that bank failed to send foreclosure notice to address that borrower had provided to bank in writing was sufficient to state claim for wrongful foreclosure) (physical precedent only).

The evidence viewed in the light most favorable to Zhong shows that neither she nor her attorney received notice of the foreclosure. There is evidence, however, that a law firm working on behalf of PNC sent notice by certified mail to the property address. Zhong argues that this notice did not satisfy OCGA § 44-14-162.2 (a) because, through her attorney, she had designated in writing another address for the notice. In more than one letter from Zhong's attorney to PNC, the attorney stated in writing, "Please direct any and all future correspondence regarding this matter to me[,]" and designated as the "matter" Zhong's loan (identifying it by number) and her property address. PNC received the attorney's letters.

PNC argues that this designation of a new address was not effective because Zhong's attorney did not have the authority to make it. But Zhong's attorney was her agent, with the authority to act on her behalf for the purpose for which he was retained. See *Anaya v. Coello*, 279 Ga. App. 578, 580 (632 SE2d 425) (2006). "[F]rom the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client[.]" *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 675 (2) (308 SE2d 544) (1983). PNC asserts that Zhong submitted an authorization form which gave PNC notice that she had restricted her attorney's authority in a manner that would prohibit the attorney from designating a different address. In the authorization form, however, Zhong merely asked PNC to release information about her loan to her attorney; the form does not speak to any limits on the authority of Zhong's attorney to act on her behalf in communicating with PNC. The authorization form is applicable to any third party to whom a customer might want loan information to be released. It cannot be construed as an express restriction on an attorney's authority.

So there is evidence giving rise to a triable issue on whether PNC breached its statutory obligation to send notice of the foreclosure to the address designated by

Zhong. And there is evidence giving rise to a triable issue on whether this breach caused Zhong to sustain damage. In her verified complaint, Zhong stated that she was "severely damaged including financial damage, damage to her credit and reputation for creditworthiness and other damages" as a result of PNC's failure to provide the required notice. See *Moore*, supra, 187 Ga. App. at 596 (verified pleading may provide evidence in opposition to summary judgment). Zhong also gave affidavit and deposition testimony to this effect. Given this evidence, jury questions exist as to whether Zhong was damaged and whether her damage was caused by the wrongful foreclosure. And for the reasons detailed in Division 2 (c), supra, in connection with Wells Fargo, jury questions also exist as to the amount of Zhong's damages. Consequently, the trial court erred in granting summary judgment to PNC on Zhong's claim for wrongful foreclosure.

*Judgment affirmed in part and reversed in part. Branch and Bethel, JJ., concur*.