**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 7, 2022**

# In the Court of Appeals of Georgia

A22A0291. WEALTHMORE PROPERTIES, LLC v. CHEETO
   HOLDINGS, LLC.

MCFADDEN, Presiding Judge.

Wealthmore Properties, LLC appeals from the order granting partial summary judgment to Cheeto Holdings, LLC in this dispute over an attorney's authority to resolve a matter arising from a tax sale. Wealthmore argues that it had limited its attorney's authority and that Cheeto was aware of the limitation. We disagree. So we affirm.

1. *Factual and procedural background.*

"(O)n appeal from the grant of summary judgment, this [c]ourt conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the

nonmoving party, warrant judgment as a matter of law." *Boyd v. JohnGalt Holdings, LLC*, 294 Ga. 640, 644 (4) (755 SE2d 675) (2014) (citation and punctuation omitted).

So viewed, the undisputed facts show that Peter Nsubuga once owned the property at issue, but in August 2011, the tax commissioner sold the property to Wealthmore at a tax sale. Wealthmore contends that, under OCGA § 48-4-45 (a), it foreclosed Nsubuga's right of redemption in 2015. OCGA § 48-4-45 (a) provides that, "[a]fter 12 months from the date of a tax sale, the purchaser at the sale . . . may terminate, foreclose, divest, and forever bar the right to redeem the property from the sale by causing a notice or notices of the foreclosure" to be served in specified ways.

To that end, in 2015 Wealthmore filed in the superior court real property records a document entitled "initial certification of barment," in which a Wealthmore member asserted that she had "participated in the foreclosure of the right to redeem the property[.]" In 2017, Wealthmore filed several documents relating to the property in the property records, including a "final affidavit of tax deed foreclosure of right to redeem," in which the same member asserted that she had "participated in the foreclosure of the right to redeem the property"; a "publisher's affidavit" stating that "the report" of the property had been published on four dates in 2015 in the county's official legal organ; and a copy of a July 16, 2015 letter from Wealthmore to Nsubuga

stating that he could redeem the property by paying the redemption price by September 7, 2015. So Wealthmore contends, and we assume, that Nsubuga became barred from his redeeming his title on that day.

Nevertheless, nearly four years later Wealthmore again took steps to bar Nsubuga's right of redemption. Those duplicative steps backfired. Wealthmore's attorney extended a renewed offer to redeem, and this time the offer was timely accepted. Wealthmore now disputes the validity of that offer and acceptance.

To take those steps, as well as to secure barment of five other properties, Wealthmore paid attorney David Basil $2,550. Documents from May and June 2019 detail the arrangement. Specifically, on May 13, 2019, Gwen Abercrombie of Wealthmore emailed Basil, listing properties for which Wealthmore "need[ed his] help acquiring Barment and Deed." The list included the property at issue and the email noted that Wealthmore needed Basil "to get the clear title on [it and another property] first" and that Basil's "check for $2,550.00 is in the mail today." Wealthmore's managing member, Roberto Springer, wrote a check to Basil Law Group, dated that day, for that amount, noting in the memo line that the check was for "Barments 6 Properties."

On May 16, 2019, Basil submitted to Wealthmore an invoice "for Costs for Foreclosure/Right to Redeem" the property at issue. On June 8, 2019, Abercrombie emailed Springer that Wealthmore had received the invoice "in reference to getting the Barment" for several properties, including the property at issue.

Meanwhile, on June 17, 2019, Nsubuga conveyed his rights in the property by quitclaim deed to the Kayton Group, LLC. Kayton is Cheeto's predecessor in title.

Then, in a June 22, 2019 letter, Basil wrote Nsubuga, referencing a "NOTICE OF PAYOFF OF RIGHT TO REDEEM" and citing OCGA § 48-4-45, the statute relating to notice of foreclosure of the right to redeem a property from a tax sale. Basil wrote,

> I am aware that a person working on behalf of my client, Wealthmore Properties, sent you a Notice of Foreclosure on 7/20/2015. If you have been properly barred, I do not have to accept your tender of the amount. However, I wanted to give you an opportunity to respond so I can read your explanation. In the event I am incorrect, I am providing a payoff amount of $18,673.03.

The letter specified a deadline of July 5, 2019.

Shortly after Nsubuga quitclaimed the property to Kayton, Kayton sought to sell it to Cheeto. Kayton retained attorney Charles Dickenson to conduct the closing.

4

Dickenson had Basil's June 22, 2019 letter to Nsubuga regarding payoff of the right to redeem. So he began a series of communications with Basil. Dickenson spoke with Basil and then emailed him to confirm that Basil would accept a check for $18,673.03 to release Wealthmore's interest in the property. Basil responded by email that Dickenson could "consider this email to serve as a confirmation of the payoff letter" and that he would "accept [the] payment of $18673.03 as payoff for the above referenced property."

So on July 2, Dickenson sent Basil by overnight delivery a check in the amount of $18,673.03, the amount Basil had calculated as the payoff of the right to redeem the property from the tax sale. And Cheeto paid Kayton $70,000 to purchase the property. The next day, Basil emailed Dickenson confirming receipt of the check. The check was deposited into Basil's account. It cleared Dickenson's account on July 5, 2019, the deadline specified in the redemption letter.

Then Wealthmore began attempting to unwind the payoff. On July 9, 2019, Basil emailed Dickenson that "the client is not accepting the tender" and had hired another lawyer. Dickenson responded that Wealthmore "d[id]n't have that option" and that Dickenson had "relied on [Basil] and [his] communications as counsel for

him/her/them." Dickenson added "I know you would've informed if your representation was discontinued prior to the transaction . . . and that didn't happen."

The next month, Cheeto filed this action against Wealthmore, seeking a declaratory judgment that it properly tendered the redemption amount and that it is entitled to Wealthmore's interest in the property. It also asserted claims for breach of contract and fraud. Wealthmore answered the complaint, filed a counterclaim against Cheeto, and filed third-party claims against Nsubuga, Kayton, and Basil. (Wealthmore also filed a separate petition to quiet title. The trial court consolidated the actions.)

Cheeto moved for partial summary judgment on its claim for declaratory judgment and on Wealthmore's counterclaims. The trial court granted the motion, ruling that Basil had the authority to bind Wealthmore, that Wealthmore's interest had been conveyed to Cheeto, and that Wealthmore had no remaining interest in the property. Wealthmore filed this appeal.

2. *Express limitation on attorney's authority*.

Wealthmore argues that the trial court erred by ruling that Basil had the authority to bind it because Wealthmore had expressly limited his authority and Cheeto was aware of this limitation.

The undisputed evidence demonstrates that Basil had the authority to pursue barment of the right of redemption. "[Basil] was [Wealthmore's] agent, with the authority to act on [its] behalf for the purpose for which he was retained." *Zhong v. PNC Bank*, 345 Ga. App. 135, 150 (3) (d) (812 SE2d 514) (2018). "This authority is determined by the contract between the attorney and the client and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties." *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 675 (2) (308 SE2d 544) (1983). And "an attorney may bind his clients outside the context of formal litigation . . . ." *White v. Orr Leasing*, 210 Ga. App. 599, 601 (1) (436 SE2d 693) (1993).

Basil and Wealthmore did not have a written retainer agreement. The scope of Basil's work for Wealthmore was defined in text messages, emails, and telephone conversations. And the undisputed evidence shows that Wealthmore retained Basil for the purpose of acquiring barment of the right to redeem the property. Wealthmore emailed Basil listing properties, including the property at issue, for which Wealthmore "need[ed his] help [in] acquiring Barment and Deed," and paid $2,550 for "Barments 6 Properties." Basil submitted to Wealthmore an invoice "for Costs for Foreclosure/Right to Redeem" the property at issue, and Wealthmore's Abercrombie

7

emailed its principal, Springer, noting that Wealthmore had received the invoice "in reference to getting the Barment" for the property. Wealthmore points to no evidence that it clarified to Basil that the scope of Basil's work was something other than "acquiring Barment and Deed." The evidence demonstrates that Wealthmore authorized Basil to obtain barment of the right to redeem the property.

Absent knowledge of an express restriction on Basil's authority, Cheeto could "deal with the attorney as if with the client, and the client [was] bound by the acts of [its] attorney within the scope of his apparent authority." *Pembroke State Bank v. Warnell*, 266 Ga. 819, 821 (1) (471 SE2d 187) (1996).

Wealthmore argues that it did restrict Basil's authority and that the restriction was communicated to Cheeto (or, at least, to Kayton, Cheeto's predecessor in title, via its attorney, Dickenson).[1] Even assuming that Wealthmore restricted Basil's authority, Wealthmore has not pointed to evidence creating a question of fact on the issue of whether such restriction was communicated to Kayton or Cheeto via Dickenson. Wealthmore argues that language in Basil's redemption letter to Nsubuga

---

[1] Neither Wealthmore nor Cheeto address whether it is relevant that the alleged limitation was communicated to Dickenson, who was the attorney for Kayton, not Cheeto. We will assume for purposes of this appeal that a communication to Dickenson was likewise a communication to Cheeto.

was an express restriction on Basil's authority, and since Dickenson admits possessing the letter, that express restriction was communicated to Dickenson. It argues that the following italicized language was an express restriction:

> I am aware that a person working on behalf of my client, Wealthmore Properties, sent you a Notice of Foreclosure on 7/20/2015. *If you have been properly barred, I do not have to accept your tender of the amount.* However, I wanted to give you an opportunity to respond so I can read your explanation. In the event I am incorrect, I am providing a payoff amount of $18,673.03.

(Emphasis added.) This language does not communicate an express restriction on Basil's authority to seek barment of the right to redeem. See Black's Law Dictionary (11th ed. 2019) (defining "express" as "[c]learly and unmistakably communicated; stated with directness and clarity"). Cf. *Brooks v. Ironstone Bank*, 314 Ga. App. 879, 882 (726 SE2d 419) (2012) (whether appellants' attorney communicated to appellee's attorney a limitation on her authority to finalize settlement agreement was a disputed issue of fact, given the attorneys' conflicting testimony). At best, the italicized language showed a conditional limitation on Nsubuga's right to redeem that was within Basil's discretion: if it was determined that Nsubuga's right to redeem had previously been foreclosed, then Basil was not required to accept his payoff. And

9

when Dickenson confirmed with Basil that Basil would accept the payoff amount, it was reasonable to conclude that Nsubuga's right to redeem had not been properly foreclosed.

Wealthmore's remedy, if it can prove it restricted Basil's authority, is against him. "[W]here there have been restrictions not communicated to the opposing party, [the client's remedy] is against the attorney who overstepped the bounds of his agency, not against the third party." *Brumbelow*, 251 Ga. at 675.

In a one-paragraph argument, Wealthmore contends that the trial court erred by disregarding its argument that special authority should be required in matters of real estate under OCGA § 15-19-6. ("Without special authority, attorneys cannot receive anything in discharge of a client's claim but the full amount in cash.") But Wealthmore fails to point to anything in the record to show that it raised this argument in the trial court, and we do not see it. So we do not address this argument. *Shelley v. Town of Tyrone*, 302 Ga. 297, 308 (3) (806 SE2d 535) (2017) ("[A]n appellant may not on appeal raise questions or issues neither raised nor ruled upon by the trial court.") (citation and punctuation omitted).

Wealthmore has not shown that the trial court erred in granting Cheeto's motion for summary judgment, so we affirm.

*Judgment affirmed. Gobeil and Pinson, JJ., concur.*